WILLIAM E. WARE, PROSECUTING ATTORNEY OF BRANCH COUNTY, v. NOAH P. LOVERIDGE, BRANCH CIRCUIT JUDGE.

*Criminal law—Breach of the peace—Use of insulting language in dwelling-house, in presence of occupants—Mandamus.*

1. The use of foul, abusive, and insulting language in a dwelling-house, in the presence of the occupants, unaccompanied by threats, and causing no expectation or fear of personal violence, is *not* a breach of the peace within the common-law definition of that term.

2. *Mandamus* will not lie to compel a circuit judge to try an information for an alleged "breach of the peace," charged to have been committed by the use of foul, abusive, and insulting language in a dwelling-house, in the presence of the occupants, but accompanied with no threat, and causing no expectation or fear of personal violence.

3. The following propositions are summarized from the opinion of Mr. Justice Campbell:

    *a*—No principle is more universally settled than that which deprives all courts of power to *infer*, from their judicial ideas of policy, crimes not defined by statute or by common-law precedents.

*b*—Nothing can be a crime until it has been recognized as such by the law of the land.

*c*—It is a fixed rule that an act must be left to *civil* remedies, unless it has been recognized as so dangerous to the public as to need repression or punishment as a wrong to the body politic.

*d*—One of the primary objects of the creation of the offices of conservators and justices of the peace was to prevent breaches of the peace, by putting persons under bonds for keeping the peace, or for their *good behavior*, which includes breaches of the peace, and more.

*e*—It has always been held, and very wisely, that personal injuries purposely inflicted have a *direct* tendency to disturb the public tranquillity; but there are very few cases where what is essentially a private, and not a public, grievance has been adopted into the list of crimes.

4, Mr: Justice LONG, in a *concurring* opinion, concurred in by CHAMPLIN and MORSE, JJ., says: "It is true that indictments will not lie for private wrongs not directly affecting the public: but, where the conduct and language of the individual is such that its natural and necessary tendency is to incite others to open violence, and provoke assaults, such conduct and language *ought* to constitute a public offense," for which some mode of punishment should be provided by the Legislature.

5, Chief Justice SHERWOOD, in a *dissenting* opinion, says: "I can never consent to the doctrine that the public peace, which the law secures to the citizen of this State, does not include and secure the tranquillity of the home against invasion by the lawless and violent; and it should be held that, among the most important duties courts and conservators of the peace have to perform is to be vigilant in protecting the quiet and sanctity of the home."

Application for *mandamus* to compel respondent to try an information for an alleged breach of the peace. Submitted April 16, 1889. Denied June 28, 1889. The facts are stated in the opinion.

*William E. Ware,* in *pro. per.,* for relator.

*H. C. Loveridge (John B. Shipman,* of counsel), for respondent.

CAMPBELL, J. Relator applies for a *mandamus* to compel respondent to assume jurisdiction over and try an information for what is claimed to have been a breach of the peace. Such an application for the exercise of our extraordinary

jurisdiction in a case of private trespass, for which a civil action would lie, is unprecedented, as I believe, in jurisprudence.

The only instance in which we have ever before been called on for a *mandamus* was in a series of cases of felony affecting the public interests directly, where indictments had been found in the Wayne circuit court, and certified to the recorder's court of Detroit for trial, and the latter court, on doubts of jurisdiction, refused to try them. The cases involved constitutional questions, and the calling of a grand jury had been resorted to in order to reach parties who would not have been prosecuted without it.[1] The circumstances were urgent and peculiar; and, while I am not prepared to say we cannot use our discretionary powers in petty misdemeanors, I do not think the interference would be desirable, or that the public interest would be subserved in compelling a circuit judge to do what we could not require of a prosecuting attorney.

But as the questions have been presented and argued, and the relator's zeal has induced him to regard the matter as one of practical moment, there will be no harm done by considering it.

The facts set out show, if true, that one William Foster, while drunk, entered the house of one William Goodwin, and in presence of said Goodwin, his wife, Mary Goodwin, and his son, Clarence Goodwin, used some obscene language concerning his own wife, who was not present, and another person, not described, whom he referred to as Anna, and used some other abusive and improper language, partly not specified.

There is nothing in the affidavit on which Foster was held to examination indicating that he threatened, or that Goodwin expected or feared, personal violence. As described, the

---

[1] See *People v. Judge of the Recorder's Court of Detroit*, 59 Mich. 529.

performance was the vaporing of a filthy-minded person whose tongue was loosed by drinking, and who was certainly an unsavory and undesirable visitor, but nothing legally worse.

The only ground on which relator has endeavored to base a claim of breach of the peace is that this language was cal- culated to provoke violence; and it is on the ground that this case does not happen to come within the penalties of any of our statutes that it is claimed to be punished as a common- law misdemeanor, and therefore beyond the jurisdiction of a justice of the peace, and punishable by a heavy fine and an imprisonment at least quadruple of that which a justice could impose, and more than fourfold heavier than any court of record could impose for similar offenses committed in public and not in private, and directly and unavoidably violating the public peace.

No principle is more universally settled than that which deprives all courts of power to infer, from their judicial ideas of policy, crimes not defined by statute or by common- law precedents. Nothing can be a crime until it has been recognized as such by the law of the land. It is a fixed rule that an act must be left to civil remedies, unless it has been recognized as so dangerous to the public as to need repres- sion or punishment as a wrong to the body politic. Our stat- utes which contain the saving clause covering offenses which may have been accidently overlooked in framing them, con- fine it to offenses punishable at common law. How. Stat. § 9434. This must necessarily mean the common law as pre- viously recognized and defined by the only source of the com- mon criminal law,—in the course of judicial precedents,—in the light of which all of our statutes themselves are con- strued.[1] It is a significant fact that very few, and it may perhaps be said that none, of the recognized books of author-

---

[1] See *In re Lamphere*, 61 Mich. 106 (head-note 2).

ity on the criminal law contain any such title as "Breach of
the Peace," with a definition of it.    The books almost uni-
versally divide crimes into classes; and breaches of the peace,
so far as they are found defined at all, are found either as
offenses against the lives and persons of individuals, or as
public disturbances, except where for certain reasons they are
made felonies.    But there is a class referred to in the decis-
ions and commentaries which seems to fix the nature of the
offense which may be so classed beyond doubt.

One of the primary objects of the creation of the offices of
conservators and justices of the peace was to prevent breaches
of the peace, by putting persons under bonds for keeping the
peace, or for their good behavior, which includes breaches
of the peace, and more.    The breach of the peace threatened
was the occasion for requiring such security.    Any breach of
the peace committed afterwards forfeited the recognizances.
The rulings under these heads give us the most reliable
information of what was meant by the term "breach of the
peace."    The present case is very plainly excluded by all the
reliable authorities from that category.

The only cases of breach of the peace, not involving open
disturbance in public places, and to the actual annoyance of
the public at large, or persons employed and actually engaged
in public functions, require personal violence, either actually
inflicted or immediately threatened.    There are, in some of
the definitions, references to language tending to provoke a
breach of the peace, and relator's claim is based on this.
But the authorities have very plainly held that this covers
nothing that is not meant and adapted to bring about violence
directly.    It is laid down, very positively, that insulting and
abusive language does not come within the rule, but it must
be threats of immediate violence, or challenges to fight, or
incitements to immediate personal violence or mischief.    It
has always been recognized that, in a certain sense, slander is
actionable chiefly for the reason that it has a provoking ten-

dency; but slander, no matter how offensive, is not indictable, and it is not recognized as ground for requiring security to keep the peace.  No words whatever, from their offensiveness and inciting tendency, are held to be breaches of the peace, with or without other circumstances not involving personal violence.

Hawkins, in chapters 60 to 63 of his Pleas of the Crown, goes very fully into the subject, and points out the distinction always recognized by the authorities between words which, however abusive and offensive, may excite anger and those which directly incite to and invite violence; and, even when used in public, it is shown that they do not constitute an affray, which requires physical violence; and this is, as shown, the essential element of a breach of the peace committed, attempted, or directly and immediately threatened. The same distinction is recognized by Mr. Bishop in section 560, vol. 1, Crim. Law, where he refers to *Com. v. Edwards,* 1 Ashm. 46, a case directly in point.  The same question is treated at some length, with illustration, in 4 Co. Inst. 180, 181, where the liability under a recognizance to keep the peace is discussed.  It is also clearly dealt with in Wood's Institutes, p. 423.  The question of what is meant by tending to provoke violence, which seems to have been regarded as a somewhat unfortunate ambiguity, has been so frequently and so uniformly disposed of as to leave no doubt on the law.  The word originally had a much narrower meaning than it afterwards received in popular use.

There are many references, more or less explicit, which bear in the same direction, partly by enumeration, and partly by other equally satisfactory reasons.  It has been held on this principle that opprobrious words will not justify an assault, while it is equally familiar doctrine that a breach of the peace will do so.  Arrests for breaches of the peace, without process, have always been put upon the necessity of preventing violence.  In the old digests and similar com-

pends, as well as in the standard commentaries, it is laid
down that an indictment will not lie for private wrongs not
directly affecting the public; and under the head of "Indict-
ment," in Bacon and Comyn, as well as in the other digests,
the lists of cases indictable and not indictable follow the
rule referred to.   In referring to the jurisdiction of the
"Leet," Comyn says it is to inquire of all assaults, affrays,
or blood spilt, or any open breach of the peace.   Under the
head of "Imprisonment," the right to arrest without a war-
rant is denied for insults and contemptuous words, even
against a magistrate not exercising his office; although in some
cases, when this abuse is committed in public, and leading
to riotous demonstrations and tumult, it may be different.
On the same principle, disturbances of public worship, or of
other public assemblies, have been recognized as breaches of
the peace, on account of the more dangerous character of
tumultuous acts over those not done in public.   And, under
the head of "Justices of the Peace," the doctrine as to
requiring security, as well as what will forfeit it, is applied
in favor of complainants, when a person has just cause to
fear that another will burn his house, or do him a corporal
hurt, or procure others to do him such, or threat to imprison,
but not because at variance, or that harm will be done of
another kind.   So it is said the security is not to be forfeited
for abusive language, or similar grievances, because they do
not tend directly to the breach of the peace, nor for tres-
passes not to the person.

It had always been held, and very wisely, that personal
injuries purposely inflicted have a direct tendency to disturb
the public tranquillity; but there are very few cases where
what is essentially a private, and not a public, grievance has
been adopted into the list of crimes.   Trespasses are gener-
ally left to redress by private remedies; and, until the legis-
lative authority discovers that particular wrongs require more
stringent treatment, it is wise to so leave them.   Public pol-

icy has never favored the needless multiplication of crimes, and partly because the public ought not to be saddled with the expense, and the public peace ought not to be scandalized by the use of public agencies to gratify private spite.

If our statutes had been so framed as to encourage the multiplication of petty prosecutions, there might be more plausibility in the desire to put great and small misdeeds on the same plane. But our laws have indicated a more sensible spirit. If foul and abusive language should be punished anywhere, it should be where it actually disturbs the public. But, in the few instances specifically provided for, these disturbances are very lightly dealt with. Disturbance of public worship is punishable by a penalty of not more than $50, or imprisonment not more than 30 days. How. Stat. § 9295. Disturbances of election and public meetings are punishable by fine of no more than $20, or imprisonment not more than 10 days. How. Stat. § 9296. No court of justice can fine for contempt committed in its presence, no matter how aggravated, by fine of more than $250, and imprisonment not more than 30 days. How. Stat. § 7235. A justice can punish an assault much more severely than the disturbances specified. It is preposterous to suppose that abuse in private can be as dangerous or offensive to the public as the same would be in public; and it would be singular if there should be a possibility, under our statutes, of finding an omitted case involving such consequences. The common-law authorities do not justify it; and the proverb that "hard words break no bones" is as well maintained in the theory of jurisprudence as in the popular sentiment.

In addition to the previous references, which are justified by the adjudications, the following citations are applicable: *Ex parte Marlborough*, 5 Q B. 955; *Ex parte Chapman*, 4 Adol. & E. 773; *Reg. v. Storr*, 3 Burrows, 1699; *Reg. v. Atkins*, Id. 1706; *Reg. v. Dunn*, 12 Adol. & E. 599; *Reg. v. Mallinson*, 16 Q. B. 367; *Ex parte Hulse*, 7 Law & Eq.

414; *Lord Vane's Case,* 2 Strange, 1202, 13 East, 171, note; Com. Dig. "Justices of Peace" (B. 8); 4 Co. Inst. 181; Wood, Inst. 423; 1 Russ. Crimes, 750; Toml. Law. Dict. "Justices of the Peace"; 2 Hawk. P. C. 26; 4 Bl. Comm. 215, 216.

The *mandamus* should be denied.

CHAMPLIN, J., concurred with CAMPBELL, J.

LONG, J.    I concur in the result reached by my Brother CAMPBELL in this case, but I am not prepared to say that insulting and abusive language used towards one in the presence of his family may not come within the definition of a breach of the peace at the common law.

It is true that indictments will not lie for private wrongs not directly affecting the public; but, where the conduct and language of the individual is such that its natural and necessary tendency is to incite others to open violence, and provoke assaults, such conduct and language ought to constitute a public offense. In Desty's American Criminal Law, § 91, the rule is laid down that every person who, without authority of law, disturbes the peace and security of the public, or who commits any act which tends to provoke or excite others to a breach of the peace, is guilty of a misdemeanor; and all acts tending to disturb the public peace are indictable at the common law.

It is not necessary that the peace be actually broken to lay the foundation to such a proceeding. If what is done is unjustifiable and unlawful, tending with sufficient directness to break the peace, no more is required. Our statute does not define the offense, but provides a punishment upon conviction of the offense, as it is recognized at the common law as a misdemeanor; and none of the writers upon the common law treat the subject under a distinctive title as "Breach of the Peace."

It is provided by our statute that—

"Every person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this State, shall be punished by imprisonment in the county jail not more than two years, or by fine not exceeding two thousand dollars, or by both, in the discretion of the court." How. Stat. § 9434.

A conviction of a breach of the peace would be punishable under this statute.

It will be seen that the punishment prescribed is much more severe than assaults and batteries, and other like offenses. In some of the states the legislature has defined, by statute, what acts shall constitute the offense, and has prescribed the punishment therefor.

Some mode of punishment, as for a public offense, should be provided and prescribed by the Legislature for this class of cases, though the offense does not fall within the common-law definition of a breach of the peace.

That one may enter the dwelling of another, and there, in the presence of his family, use abusive and insulting language, and the party be left to his remedy in a private action only, would seem to require of the Legislature some means of redress for such abuse and insults more speedy than is to be had in an action for trespass or slander.

The party injured may indeed expel the offender, and eject him from the premises, using such force, and only such, as may be required to do so, and may have a private action; but this does not often meet the requirements of such cases.

The home of every person is held sacred. There one may retire, and, under the law, be protected in its quiet and peaceable enjoyment. It is his castle, into which no other may offensively intrude; and yet we find, as in this case, a stranger entering there, drunk and boisterous, calling the wife of the householder "a damnation liar," and using other vile and obscene language, and are compelled, under precedents too well settled to be overturned, to turn the aggrieved

75 MICH.—32.

party over to his civil remedy under the law. Such outrageous conduct should subject the party to punishment as for a public offense; but it is a matter of legislative concern, and not for the courts.

Courts cannot extend by construction these long-settled rules to meet the exigencies of some particular case.

CHAMPLIN and MORSE, JJ., concurred with LONG, J.

SHERWOOD, C. J. (*dissenting*).    I must entirely dissent in this case from the conclusion reached by my brethren in their opinions filed, and from the reasoning by which they justify it.

I can never consent to the doctrine that the public peace, which the law secures to the citizen of this State, does not include and secure the tranquillity of the home against invasion by the lawless and violent; and it should be held that, among the most important duties courts and conservators of the peace have to perform, is to be vigilant in protecting the quiet and sanctity of the home; and, when the administration of the law fails to do this, it ceases to become useful in any community; and, where its means to furnish such protection are limited to a civil action against the marauder and desperado, it fails, not only to accomplish the object intended, but is unworthy of the respect of all classes of our people.

It is substantially conceded that, if the violator of the rights of the injured family in this case had committed the same offense upon the public streets, he would have been guilty of a great outrage of the public peace.    I think it must be regarded as a strange doctrine indeed that such action should be held less atrocious because committed by entering the home of this family, two rods distant, where the consequences were of a far more serious character.

I think the action taken by the prosecuting attorney was right; that he should be commended for his vigilance; and the *mandamus* should be granted.