REGENTS OF THE UNIVERSITY OF MICHIGAN v WASHTENAW
COUNTY COALITION AGAINST APARTHEID

Docket No. 44729. Submitted March 5, 1980, at Lansing.—Decided
May 19, 1980.

Several members of a group known as the Washtenaw County
Coalition Against Apartheid disrupted a meeting of the Regents
of the University of Michigan to the extent that business could
not be conducted. The same thing occurred a day later. The
Regents sought a declaratory judgment and injunctive relief.
The circuit court issued a temporary restraining order enjoin-
ing the Coalition from interfering with the meetings pending a
hearing and authorizing the Regents to relocate the meeting
and to admit only members of the press and other members of
the public at the Regents' discretion. The Coalition moved to
dissolve the restraining order and counterclaimed for an in-
junction to restrain the Regents from further alleged noncom-
pliance with the Open Meetings Act. The restraining order was
dissolved. The Regents then moved for a declaratory judgment,
seeking a ruling that the Open Meetings Act permits the
relocation of the meetings and the exclusion from attendance of
persons who breach the peace, and for summary judgment on
the counterclaim. The Washtenaw Circuit Court, Ross W.
Campbell, J., issued a declaratory judgment finding that the
recess of the meeting for less than 36 hours and relocation of
the meeting with an announcement of the new time and
location to those present at the original place did not violate
the Open Meetings Act. The court denied injunctive relief and
the relief requested in the Coalition's counterclaim was also
denied. The defendants appeal, alleging, *inter alia,* that the

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes § 187 *et seq.*
[2] 73 Am Jur 2d, Statutes §§ 194, 195.
[3] 2 Am Jur 2d, Administrative Law §§ 227-229.
    56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
    cal Subdivisions § 156.
[4] 56 Am Jur 2d, Motions, Rules, and Orders § 10.
[5] 20 Am Jur 2d, Costs § 10 *et seq.*
    42 Am Jur 2d, Injunctions § 373 *et seq.*

trial court erred in its interpretation of the Open Meetings Act
and in its dismissal of the counterclaim and that defendants
are entitled to costs and attorney fees. *Held:*

1. The Open Meetings Act does not require application of its
notice rules on the occasion of a recess of less than 36 hours,
and the relocation of a recessed meeting is not prohibited. The
Regents complied with the restraining order by providing no-
tice of the time and place of the reconvened meeting, which
was within the spirit and purpose of the Open Meetings Act.
There was no violation of the act.

2. Dismissal of the counterclaim was proper. The defendants'
claim of surprise is untenable. Moreover, an injunction against
further noncompliance with the Open Meetings Act is not
possible where the court has found no noncompliance.

3. Recovery of costs and attorney fees under the act is limited
to the party commencing an action who succeeds.

Affirmed.

1. STATUTES — CONSTRUCTION OF STATUTES.

A subsection of a statute which deals with a distinct topic does
not require interpolation of language from other clearly inde-
pendent subsections except when expressly referred to.

2. STATUTES — CONSTRUCTION OF STATUTES — PLAIN MEANING.

The plain meaning of a statute controls where the language is
clear and unambiguous.

3. NOTICE — OPEN MEETINGS ACT — RECESSED MEETINGS — STATUTES.

A public body that recesses a meeting for more than 36 hours
must comply with the notice rules of the Open Meetings Act
applicable to rescheduled meetings; a shorter recess is not
subject to those rules and a public body did not violate the
Open Meetings Act where, because of disruptions of its meeting
by several persons to the extent that business could not be
carried on, it obtained a temporary restraining order allowing
it to move the location of its meeting and to exclude members
of the disruptive group and posted people at the regular meet-
ing place to direct members of the general public to the new
location (MCL 15.265; MSA 4.1800[5]).

4. MOTIONS — ACTION — DISMISSAL OF COUNTERCLAIM — SURPRISE.

A defendant may not claim surprise at the dismissal of its
counterclaim at a hearing on the plaintiff's motion for declara-
tory judgment where the plaintiff's motion adequately put the
defendant on notice that the essential issue at stake would be
argued and decided at the motion hearing and where the

defendant was given ample opportunity at the hearing to assert its counterclaim.

5. Costs — Attorney Fees — Open Meetings Act — Statutes.

   A defendant in an action concerning the Open Meetings Act who succeeds in dissolving a temporary restraining order is not entitled to costs and attorney fees because the Open Meetings Act provides for the recovery of costs and attorney fees only when the party commencing a civil action for injunctive relief under the act is successful (MCL 15.271; MSA 4.1800[21]).

*Davis & Fajen (Roderick K. Daane,* General Counsel, University of Michigan, of counsel), for plaintiff.

*O'Brien, Moran & Dimond,* for defendant.

Before: M. J. Kelly, P.J., and D. F. Walsh and Beasley, JJ.

M. J. Kelly, P.J. Defendants appeal as of right from a declaratory judgment and order denying injunctive relief issued in Washtenaw County Circuit Court on April 11, 1979.

The Regents of the University of Michigan (the Regents), the governing body of that educational institution, is a Michigan constitutional corporation having substantial holdings in corporations which do business in South Africa. The Washtenaw County Coalition Against Apartheid (WCCAA) is an unincorporated voluntary association composed of unnamed officers and members (designated as John Doe, through 50, and Mary Roe, through 50), university students and others who are opposed to the apartheid racial policies of the government of South Africa.

The Regents meets every month (save August) in Ann Arbor. On Thursday, March 15, 1979, the Regents held a scheduled meeting at its regular location, 503 Thompson Street, Ann Arbor. Ap-

proximately 50 unidentified members of the WCCAA, along with approximately 150 unidentified supporters, appeared at the meeting and disrupted it to the extent that the Regents could not conduct its business. On the following day, March 16, the WCCAA again appeared at and disrupted the Regents' meeting; two arrests resulted from this confrontation.

On March 16, 1979, the second day of disruptions, the Regents filed a complaint seeking a declaratory judgment, an injunction and other relief, alleging that the WCCAA disruptions were violent in nature, threatened the public peace and safety, and caused irreparable harm. The complaint also requested issuance of a temporary restraining order authorizing the Regents to move the location of its meetings, to close the meetings to those persons who should be excluded in the discretion of the Regents, and to restrain the WCCAA from interfering with the Regents' meetings. Following a brief hearing at which a portion of a tape recording of the disruptions was aired and the testimony of two of the Regents' witnesses was taken, Judge Van Domelen issued an *ex parte* temporary restraining order. The *ex parte* temporary restraining order enjoined the WCCAA from interfering with the Regents' meetings in any way pending a hearing; authorized the Regents to relocate its meetings from the Regents Room at 503 Thompson Street to another safe location pending further order of the court; and gave permission to the Regents to admit only members of the press and other members of the public within the discretion of the Regents, and to lock the meeting room doors. The order recited that it was granted without notice because of the immediacy required to preserve public peace and safety and to prevent

injury. Pursuant to the TRO, the Regents conducted its afternoon session of the March 16 meeting in the smaller President's Room on the second floor of the building at 503 Thompson. According to the Regents, officials were posted at the Regents Room to advise the press and members of the general public of the room change. The WCCAA claims that the afternoon session was held in an undisclosed location and was not open to members of the public.

On March 20, 1979, the WCCAA moved to dissolve the temporary restraining order and counterclaimed for an injunction to restrain the Regents from alleged further non-compliance with the provisions of the Michigan Open Meetings Act and for damages. After hearing argument from counsel for both parties on March 23, Judge Kent noted that the TRO had enabled the Regents to accomplish its objective of holding an orderly meeting and ordered the TRO dissolved without deciding its constitutionality or legality. Judge Kent declined to pass on either the Regents' request for an injunction to restrain disruptions at future meetings, or the WCCAA's counterclaim and motions for an injunction against "further" violations of the Open Meetings Act.

On April 3, 1979, the Regents moved for a "partial summary declaratory judgment" asking the trial court to rule that the Open Meetings Act permits the Regents to recess, move its location and exclude from attendance those persons who breach the peace, and requesting summary judgment on the WCCAA's counterclaim on grounds that there existed no genuine issue of material fact. A hearing on the motion was held on April 9, 1979, before Judge Campbell. On Aprill 11, Judge Campbell issued a declaratory judgment and order denying injunctive relief. In his written opinion,

the trial judge reasoned that the fundamental purpose of the Open Meetings Act, to extend to the public the opportunity to observe public business and to address public bodies, does not give the general public the right to participate in the bodies' deliberations or to disrupt a meeting, no matter how worthy the cause. The court declared that the procedure proposed by the Regents, a recess of less than 36 hours followed by removal of the meeting to a new location and an announcement of the new location and time of reconvening of the meeting to all who are present at the original place, was within the spirit of, and would not violate, the Open Meetings Act. The Regents' request for an injunction was denied in view of the adequate legal remedy afforded.. The damages and injunction prayed for in the counterclaim filed by the WCCAA were likewise denied as "[t]he pleadings * * * do not allege facts sufficient to support the defendant's claim that the plaintiff has failed or will hereafter fail to comply with the Open Meetings Act".

Of the five issues raised in the appellate briefs, only those which were actual questions in controversy below will be address by this Court. To the extent that the lower court opinion discusses areas not originally disputed by the parties, we decline to decide: whether the lower court's definition of "breach of the peace" is unconstitutionally vague and overbroad, whether a public body may condition admission to a public meeting upon a consensual search for weapons, or whether a public body must make every reasonable attempt to accommodate the number of people who may wish to attend its meetings.

The first issue for our consideration is whether the trial court erroneously interpreted the Open

Meetings Act, MCL 15.261 *et seq.;* MSA 4.1800(11) *et seq.,* to permit plaintiff to exclude from a meeting those members of the general public committing a breach of the peace, to recess the meeting for a brief period of time, and to remove the meeting to another location conditioned upon an announcement of the new location and time of reconvening. The Open Meetings Act clearly provides for exclusion of a person from a public meeting for a breach of the peace actually committed at the meeting. MCL 15.263; MSA 4.1800(13). At issue here is the "recess and remove" procedure for exclusion employed by the Regents. Defendants' major contention is that when a public body recesses its meeting for a brief time it cannot remove to a new location without satisfying the notice requirements pertaining to "rescheduled" meetings. The act's notice provisions are as follows:

"Sec. 5. (1) A meeting of a public body shall not be held unless public notice is given as provided in this section by a person designated by the public body.

"(2) For regular meetings of a public body, there shall be posted within 10 days after the first meeting of the public body in each calendar or fiscal year a public notice stating the dates, times, and places of its regular meetings.

"(3) If there is a change in the schedule of regular meetings of a public body, there shall be posted within 3 days after the meeting at which the change is made, a public notice stating the new dates, times, and places of its regular meetings.

"(4) For a rescheduled regular or a special meeting of a public body, a public notice stating the date, time, and place of the meeting shall be posted at least 18 hours before the meeting. The requirement of 18 hour notice shall not apply to special meetings of subcommittees of a public body or conference committees of the state legislature. A conference committee shall give a 6 hour

notice. A second conference committee shall give a 1 hour notice. Notice of a conference committee meeting shall include written notice to each member of the conference committee and the majority and minority leader of each house indicating time and place of the meeting.

"(5) A meeting of a public body which is recessed for more than 36 hours shall be reconvened only after public notice, which is equivalent to that required under subsection (4) has been posted. If either house of the state legislature is adjourned or recessed for less than 18 hours, the notice provisions of subsection (4) are not applicable. Nothing in this section shall bar a public body from meeting in emergency session in the event of a severe and imminent threat to the health, safety, or welfare of the public when 2/3 of the members serving on the body decide that delay would be detrimental to efforts to lessen or respond to the threat." MCL 15.265; MSA 4.1800(15).

Defendants argue that because subsection (5) above does not expressly permit a change of location of a recessed meeting, it is forbidden and that the change of location that occurred here converted the meeting from "recessed" to "rescheduled" under the act. Principles of statutory construction do not support this position. Each of the above five subsections deals with a distinct topic and does not require interpolation of language from the other clearly independent provisions except when expressly referred to. See 2A Sutherland, Statutory Construction (4th ed), § 47.02, p 71. Furthermore, the language of subsection (5), which pertains to recessed meetings, is clear and unambiguous; the plain meaning controls. Sutherland, *supra,* § 46.01, p 48. A meeting that is recessed in excess of 36 hours must comply with the notice rules applicable to rescheduled meetings; a shorter recess, as occurred here, does not trigger application of those rules. As the trial court opinion

correctly points out, a multitude of reasons might necessitate a meeting's brief recess and relocation: fire, cessation of utility service, unrelated noise interference, etc. Viewed in this context, defendants' position is clearly untenable; the act does not contemplate 18-hour notice requirements under such circumstances. We find no support for the position advanced by defendants that relocation changes the meeting's categorization from "recessed" to "rescheduled".

We do, however, share the concern obviously felt by defendants and the trial court that a meeting which is recessed remain open to the public. In order to remain faithful to the spirit and purpose of the Open Meetings Act the Regents were required to provide notice of the new time and place of the reconvened meeting. Plaintiff complied with the court order to this effect by posting officials at the Regents Room to advise the press and members of the general public of the room change. Therefore, we find no conflict with MCL 15.268; MSA 4.1800(18), which permits closed sessions only for the limited purposes specified therein.

A construction of the act as outlined above does not do violence to its spirit or purpose; rather, it represents a comfortable balancing of the public's need to know and the public body's duty to make decisions and effectively carry out its tasks. Certainly, the Regents should not be required to have demonstrators who breach the peace at a meeting physically and forcefully expelled by law enforcement officials. Confrontation is not mandated by the act. We hold that a peaceful alternative, such as "recess and remove" is an appropriate expedient.

Defendants also claim error in the trial court's

decision to dismiss their counterclaim for damages and injunctive relief against alleged further non-compliance with the Open Meetings Act. We are not persuaded by defendants' claim of surprise with regard to the trial judge's dismissal of their counterclaim against the Regents. The Regents' "motion for partial summary declaratory judgment and alternative motion for speedy hearing of action for declaratory relief", although somewhat ambiguously titled, adequately put the WCCAA on notice that the essential issue at stake—whether the act permitted the Regents to "recess and remove" to exclude members of the WCCAA who breached the peace—would be argued and decided at the motion hearing. The WCCAA was given ample opportunity at the hearing to assert its counterclaim against the Regents, and cannot be heard to complain that its claim was ignored by the trial judge. Moreover, any error is harmless, since the declaration by the trial court that the Regents' actions were authorized by the act effectively precludes recovery by the WCCAA on its counterclaim, *i.e.*, it cannot enjoin "further" non-compliance where there was never a failure to comply, nor can it recover damages for action taken by the Regents that was legal in all respects.

We also reject the WCCAA's claim that it is entitled to costs and attorney fees. MCL 15.271; MSA 4.1800(21) provides for such recovery only when the party *commencing* a civil action for injunctive relief succeeds in that action. The WCCAA's dissolution of the *ex parte* TRO entered in behalf of the Regents does not fall within the class of actions for which costs and attorney fees may be obtained as outlined above.

Affirmed.