*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FRANK CUSUMANO,

        Plaintiff-Appellant,

v

JANET I. DUNN,

        Defendant-Appellee.

UNPUBLISHED
August 27, 2020

No. 349959
Macomb Circuit Court
LC No. 2018-004207-CZ

Before: REDFORD, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) for defendant and dismissal of his action brought under the Open Meetings Act, MCL 15.261 *et seq*., related to his expulsion by defendant from a Macomb Township Board of Trustees (Board) public meeting. We reverse.

## I. FACTUAL BACKGROUND

Plaintiff, a citizen of Macomb Township, attended the Board's September 12, 2018 public meeting presided over by defendant, the Macomb Township Supervisor and Chair of the Board, and participated during the public comment portions of the meeting. Near the end of the meeting during the Supervisor's Comments portion, defendant read a letter received by the Board from an attorney in which the attorney indicated plaintiff had filed a quo warranto action against Dino Bucci, a Board trustee,[1] seeking his removal from office. In the letter to the Board, the attorney

---

[1] A federal grand jury indicted Bucci on November 15, 2017, on eighteen counts of conspiracy, bribery, embezzlement, extortion, mail fraud, and money laundering, in connection with public contracts in Macomb Township and the Macomb County Department of Public Works. Plaintiff sued Bucci on August 10, 2018, alleging that Bucci committed crimes before obtaining his current Board position making him ineligible to assume the position and disqualifying him from the office. In May 2020, Bucci pleaded guilty to conspiracy to commit extortion and conspiracy to commit bribery and theft concerning programs that received federal funds.

essentially demanded the Board appoint and pay for an attorney to defend Bucci in the quo warranto action. When defendant concluded reading the letter into the record, she directly addressed plaintiff, who was sitting in the public seating area of the board meeting room: "So, thank you, Mr. Cusumano, you probably have cost us another few thousand dollars."

Plaintiff rose from his seat and while he walked to the lectern requested to speak, but defendant struck her gavel and emphatically declared, "Sit down, your time to speak is over." At the lectern, plaintiff said, "I want to state that that is untrue, he's not named in his official capacity, number one. Number two, Karen Spranger also—" but defendant cut him off and stated that the meeting would move on to the Clerk's Comments. Plaintiff turned from the lectern but hesitated before walking back to his seat, turned back and stated, "I just wish that this board would act appropriately and professionally." Defendant struck the gavel as plaintiff returned to his seat and stated, "That's enough. Deputy, would you please remove this man." Plaintiff asked defendant to explain the legal basis for his removal but she declined to respond and waved her arm signaling the deputy to eject plaintiff from the public meeting. The deputy looked at plaintiff and gestured to him to walk to the exit. Plaintiff said nothing further, obeyed the directive, calmly walked to the exit and out of the public meeting accompanied by the deputy who remained with plaintiff in the hallway until the meeting's end, and then escorted plaintiff out of the building.

Plaintiff sued defendant alleging that, because he had not breached the peace at the Board's September 12, 2018 public meeting, she intentionally violated the Open Meetings Act, MCL 15.263(6), by removing him from the meeting. After conducting discovery, the parties filed cross motions for summary disposition. The trial court held a brief hearing, granted defendant summary disposition, and dismissed plaintiff's lawsuit against defendant.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. When considering a motion under MCR 2.116(C)(10), the trial court must consider all substantively admissible evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*.; *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160 (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (citation and quotation marks omitted). Further, we review de novo questions of statutory interpretation. *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 211; 934 NW2d 713 (2019).

## III. ANALYSIS

Plaintiff first argues that the trial court erred because genuine issues of material fact existed regarding whether plaintiff committed a breach of the peace justifying his removal from the meeting. We agree. For the reasons explained in this opinion, we conclude that a genuine issue of material fact exists whether plaintiff committed a breach of the peace at the meeting, and therefore, the trial court erred by granting defendant summary disposition.

This case involves an issue of statutory interpretation of a provision of the Open Meetings Act. This Court recently explained in *Farris v McKaig*, 324 Mich App 349, 353-354; 920 NW2d 377 (2018) (quotation marks and citations omitted):

> In reviewing questions of statutory interpretation, we must discern and give effect to the Legislature's intent. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. When interpreting an undefined statutory term, the term must be accorded its plain and ordinary meaning. Consulting a lay dictionary is proper when defining common words or phrases that lack a unique legal meaning, but when the statutory term is a legal term of art, the term must be construed in accordance with its peculiar and appropriate legal meaning.

The Open Meetings Act provides, "[a]ll meetings of a public body shall be open to the public and shall be held in a place available to the general public." MCL 15.263(1). Moreover, "[a]ll persons shall be permitted to attend any meeting except as otherwise provided in this act." *Id*. "A person shall be permitted to address a meeting of a public body under rules established and recorded by the public body. The legislature or a house of the legislature may provide by rule that the right to address may be limited to prescribed times at hearings and committee meetings only." MCL 15.263(5).

The Open Meetings Act, also, specifically limits exclusion of persons from public meetings. MCL 15.263(6) provides that "[a] person shall not be excluded from a meeting otherwise open to the public except for a breach of the peace actually committed at the meeting." Under MCL 15.273(1), "A public official who intentionally violates this act shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing the action."

We find no ambiguity in the plain language of MCL 15.263(6). Under this statutory provision, a public body, including a local legislative or governing body as provided under MCL 15.262(a) such as the Board, may not exclude any person from a public meeting "except for a breach of the peace actually committed at the meeting." MCL 15.263(6). The Open Meetings Act, however, does not define the term "breach of the peace." The term "breach of the peace" is a legal term of art that must be construed in accordance with its peculiar and appropriate legal meaning. *Farris*, 324 Mich App at 354. "When a statutory term is not statutorily defined, this Court turns to its dictionary definition to determine the term's plain and ordinary meaning." *Yoches v Dearborn*, 320 Mich App 461, 470; 904 NW2d 887 (2017) (citation omitted). *Black's Law Dictionary* (11th ed) defines the legal term "breach of the peace" as "[t]he criminal offense of creating a public disturbance or engaging in disorderly conduct, particularly by making an unnecessary or distracting noise."[2] That definition gives some meaning to the term but does not

---

[2] *Black's Law Dictionary* (11th ed) provides by further example:

-3-

fully explain how the term "breach of the peace" must be understood for purposes of MCL 15.263(6).

Michigan caselaw, however, lends clarity to the meaning of this legal term. In *People v Bartz*, 53 Mich 493, 495; 19 NW 161 (1884), our Supreme Court stated:

> The term "breach of the peace" is generic, and includes riotous and unlawful assemblies, riots, affray, forcible entry and detainer, the wanton discharge of fire-arms so near the chamber of a sick person as to cause injury, the sending of challenges and provoking to fight, going armed in public without lawful occasion, in such manner as to alarm the public, and many other acts of a similar character. The wanton discharge of fire-arms in the public streets of a city is well calculated to alarm the public, and cause them to be apprehensive of individual safety; and I think the recorder was entirely correct when he instructed the jury that such act constituted a breach of the peace.

In *Davis v Burgess*, 54 Mich 514; 20 NW 540 (1884), our Supreme Court considered and discussed what conduct constituted a "breach of the peace" by explaining:

> Did the language and conduct of the plaintiff on that occasion amount to a breach of the peace? The answer to this question must necessarily determine the decision in this case. The offense, whatever its character, was committed in the presence of the officers in the public street in a city, in the presence of citizens. The language used was not only vile and profane, but forbidden under penalties both by the by-laws of the city and the statutes of our state. It was against decency and public morals, of the most aggravating character, well calculated to arouse the passions

---

"A breach of the peace takes place when either an assault is committed on an individual or public alarm and excitement is caused. Mere annoyance or insult is not enough: thus at common law a householder could not give a man into custody for violently and persistently ringing his door-bell. It is the particular duty of a magistrate or police officer to preserve the peace unbroken; hence if he has reasonable cause to believe that a breach of the peace is imminent he may be justified in committing an assault or effecting an arrest." RFV Heuston, *Salmond on the Law of Torts* 131 (17th ed. 1977).

"The beginning of our criminal justice . . . was concerned very largely with the problem of keeping the peace. Because of this fact all early indictments included some such phrase as "against the peace of the King"; and until recent statutory provisions for simplification, indictments in this country were thought to be incomplete without some such conclusion as "against the peace and dignity of the state." As a result of this history all indictable offenses are sometimes regarded as deeds which violate the public peace, and hence in a loose sense the term "breach of the peace" is regarded as a synonym for crime." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 477 (3d ed. 1982)].

and induce personal violence, which was threatened if the officer laid hands upon the offender.

Now, what is understood by "a breach of the peace?" By "peace," as used in the law in this connection, is meant the tranquillity enjoyed by citizens of a municipality or community where good order reigns among its members. It is the natural right of all persons in political society, and any intentional violation of that right is "a breach of the peace." It is the offense of disturbing the public peace, or violation of public order or public decorum. Actual personal violence is not an essential element in the offense. If it were, communities might be kept in a constant state of turmoil, fear, and anticipated danger from the wicked language and conduct of a guilty party, not only destructive of the peace of the citizens, but of public morals, without the commission of the offense. The good sense and morality of the law forbid such a construction. I think the language and conduct of Davis in this case, as it appears on the record, shows him guilty of a breach of the peace, and in the act of committing it at the time he was arrested. The court should have submitted the defendant's case, as he made it, to the jury under proper instructions, to ascertain the truth of the facts as stated by him and his witnesses. This the court did not do, and the failure was error. [*Id*. at 517-518.]

A few years later our Supreme Court had occasion again to consider what constituted a "breach of the peace." In *People v Loveridge*, 75 Mich 488, 491-494; 42 NW 997 (1889), our Supreme Court explained:

It is a significant fact that very few, and it may perhaps be said that none, of the recognized books of authority on the criminal law contain any such title as "Breach of the Peace," with a definition of it. The books almost universally divide crimes into classes; and breaches of the peace, so far as they are found defined at all, are found either as offenses against the lives and persons of individuals, or as public disturbances, except where for certain reasons they are made felonies. But there is a class referred to in the decisions and commentaries which seems to fix the nature of the offenses which may be so classed, beyond doubt.

One of the primary objects of the creation of the office of conservators and justices of the peace was to prevent breaches of the peace, by putting persons under bonds for keeping the peace, or for their good behavior, which includes breaches of the peace, and more. The breach of the peace threatened was the occasion for requiring such security. Any breach of the peace committed afterwards forfeited the recognizances. The rulings under these heads give us the most reliable information of what was meant by the term "breach of the peace." The present case is very plainly excluded by all the reliable authorities from that category. The only cases of breach of the peace, not involving open disturbance in public places, and to the actual annoyance of the public at large or persons employed and actually engaged in public functions, require personal violence, either actually inflicted or immediately threatened. There are, in some of the definitions, references to language tending to provoke a breach of the peace, and relator's claim is based on this; but the authorities have very plainly held that this covers nothing that is not

meant and adapted to bring about violence directly. It is laid down, very positively, that insulting and abusive language does not come within the rule, but it must be threats of immediate violence, or challenges to fight, or incitements to immediate personal violence or mischief. It has always been recognized that, in a certain sense, slander is actionable chiefly for the reason that it has a provoking tendency; but slander, no matter how offensive, is not indictable, and it is not recognized as ground for requiring security to keep the peace. No words whatever, from their offensiveness and inciting tendency, are held to be breaches of the peace, with or without other circumstances not involving personal violence.

*Bartz*, *Davis*, and *Loveridge* indicate that the kind of conduct that constitutes a "breach of the peace" includes abusive, vile, and excessive acts that are grossly inconsistent with civil conduct acceptable in the community. In *Yerkes v Smith*, 157 Mich 557, 560; 122 NW 223 (1909), our Supreme Court stated that "there can be no breach of the peace within the meaning of the law that does not embrace some sort of violent as well as dangerous conduct."

In *In re Gosnell*, 234 Mich App 326, 336; 594 NW2d 90 (1999), this Court explained:

Moreover, the common-law definition of breach of the peace is instructive. In the lead opinion in *People ex rel Ware v Branch Circuit Judge*, 75 Mich 488, 492-493; 42 NW 997 (1889) (CAMPBELL, J., joined by CHAMPLIN, J.), Justice CAMPBELL explained that breaches of the peace typically involved open disturbance in public places.

Additionally, in *Dearborn Heights v Bellock*, 17 Mich App 163, 168-169; 169 NW2d 347 (1969), this Court explained:

A "breach of the peace" has been defined in Michigan as any intentional violation of the natural right of all persons in a political society to the tranquillity enjoyed by citizens of a community where good order reigns among its members. *Davis v Burgess* (1884), 54 Mich 514. Such a disturbance must be outside the ordinary course of human conduct . . . [,] unreasonable disturbances.

\* \* \*

"The offense consists in voluntary and not involuntary conduct or that necessary for the protection of a person or his property. Whether or not a given act or state of conduct amounts to a breach of the peace depends upon the circumstances attending the act or conduct, such as the identities and relationships of the complaining and accused parties and the occasion for the act or conduct." 6 McQuillin, *Municipal Corporations* (3d ed.), s 24.101. [*Id*. at 169.]

In *City of Owosso v Pouillon*, 254 Mich App 210, 220; 657 NW2d 538 (2002), a case in which this Court concluded that the defendant made grotesquely exaggerated speech when he publicly spoke out against abortion while standing on city property near a dentist's office and a church where mothers were dropping off their children for daycare and preschool, this Court concluded that such conduct had no tendency to incite an imminent breach of the peace. As part

of its analysis of what constituted a "breach of the peace," this Court quoted *Cantwell v Connecticut*, 310 US 296, 301-309; 60 S Ct 900; 84 L Ed 1213 (1940), for the observation that,

> in practically all [breach of the peace cases], the provocative language which was held to amount to a breach of the peace consisted of profane, indecent, or abusive remarks directed to the person of the hearer. Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument. [*Id*.]

In *Regents of Univ of Mich v Washtenaw Co Coalition Against Apartheid*, 97 Mich App 532; 296 NW2d 94 (1980), this Court considered the defendant's appeal of the trial court's entry of a declaratory judgment in the plaintiff's favor and order denying the defendant's request for injunctive relief. The case arose from the plaintiff's attempts to conduct a public meeting at which the defendant's supporters attended to protest the university's investment holdings in corporations doing business in South Africa, which at the time enforced apartheid, a system of segregation and discrimination on grounds of race. The plaintiff held a scheduled meeting at which "[a]pproximately 50 unidentified members of the [Washtenaw County Coalition Against Apartheid], along with approximately 150 unidentified supporters, appeared at the meeting and disrupted it to the extent that the Regents could not conduct its business." Because of the disruption, the plaintiff recessed the meeting. The next day it reconvened the meeting but supporters of the same organization disrupted the meeting again by conduct that resulted in two arrests because of confrontations. *Id*. at 534-535. The plaintiff sued for a declaratory judgment, injunction and other relief, including permission to hold its meeting at another location in a closed session. The plaintiff moved for partial summary declaratory judgment and the trial court granted the motion.

On appeal, this Court addressed whether the trial court erroneously interpreted the Open Meetings Act "to permit plaintiff to exclude from a meeting those members of the general public committing a breach of the peace, to recess the meeting for a brief period of time, and to remove the meeting to another location conditioned upon an announcement of the new location and time of reconvening." *Id*. at 537-538. This Court noted that MCL 15.263(6) prohibited exclusion of a person from a public meeting unless the person committed a breach of the peace at the meeting. *Id*. at 538. Although this Court did not recite a definition of "breach of the peace" or expressly state that the defendant's supporters committed a "breach of the peace," it indicated that the defendant's supporters breached the peace at the meetings by their confrontational conduct which required physical and forceful expulsion by law enforcement officials. *Id*. at 540.[3]

---

[3] In *Holeton v Livonia*, 328 Mich App 88, 99; 935 NW2d 601 (2019), this Court considered whether a city council member violated the plaintiff's First Amendment rights by asking the plaintiff to leave a city council meeting after the plaintiff failed to comply with a rule requiring members of the public to direct all comments to the city council chair. This Court commented that removing the plaintiff from the city council meeting for a mere rule violation "might have amounted to a violation of Michigan's [Open Meetings Act]." *Id*. This Court, however, did not

All of these cases indicate that a "breach of the peace" constitutes seriously disruptive conduct involving abusive, disorderly, dangerous, aggressive, or provocative speech and behaviors tending to threaten or incite violence. These cases clarify that under Michigan law a "breach of the peace" goes well beyond behavior acceptable in a civil society.

In this case, the record reflects defendant directed her statement to plaintiff personally. Although defendant did not expressly ask for plaintiff's response to her comment, plaintiff asserts the comment as an invitation to respond. Likewise, plaintiff asserts the record demonstrates he refrained from making an abusive, dangerous, aggressive, or provocative outburst. Instead, he argues that he approached the lectern to address the Board regarding the matter raised by defendant and calmly attempted to clarify what he considered incorrect in defendant's characterization of his quo warranto lawsuit against Bucci. Defendant declined to recognize plaintiff and admonished him to be seated. Plaintiff briefly continued speaking before acquiescing.

The record reflects that the trial court granted defendant summary disposition based upon its incorrect conclusion that plaintiff's indecorum warranted his expulsion from the public meeting. The trial court essentially concluded that, as a matter of law, plaintiff breached the peace.

The record below, however, does not support the trial court's conclusion. The facts of this case indicate that reasonable minds might differ on whether plaintiff committed a breach of the peace. Accordingly, we conclude that the trial court erred by granting defendant summary disposition because a genuine issue of material fact exists requiring determination by a jury whether plaintiff committed a breach of the peace as defined herein.

Defendant argues that plaintiff violated Board rules or policy, the mere violation of which warranted his expulsion from the public meeting. Defendant also contends that the Board had an established practice of allotting only two periods for public comment that limited individuals to speak for three minutes, and by violating that common practice, plaintiff could be removed from the meeting. Defendant argues that plaintiff knew of that practice but violated it, warranting his expulsion. We disagree.

The record reveals the Board never formally adopted rules governing the manner in which its meetings were to be conducted. No evidence indicates the Board ever established and recorded rules as permitted under MCL 15.263(5) to limit public comment. Defendant cannot rely upon unwritten rules or policy for her action.[4] Further, although, under MCL 15.263(5), public bodies

---

define the term "breach of the peace" or determine whether a violation of MCL 15.263(6) occurred because the issue presented and decided concerned constitutional grounds rather than Open Meetings Act issues. *Id*. at 100.

[4] We are cognizant that a public body may indicate through a published agenda the order and manner in which it will conduct its business at a public meeting and through parliamentary procedure may approve and adopt such agenda and conduct the meeting according to rules established and recorded by the public body in such agenda as permitted under MCL 15.263(5). References to an agenda for the Board's September 12, 2018 public meeting can be found in

may establish and enforce recorded rules that limit public comment, see *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297; 662 NW2d 108 (2003), such authority does not nullify MCL 15.263(6)'s prohibition against exclusion of any person from a public meeting except for a "breach of the peace" at the meeting.

Plaintiff also argues that the trial court erred by granting defendant summary disposition because she intentionally violated the Open Meetings Act which entitled him to damages. Defendant argues that plaintiff cannot establish that she intentionally violated the Act. The trial court, however, did not address or decide this issue, and therefore, it is not ripe for our review. Moreover, because a genuine issue of fact exists regarding whether plaintiff committed a "breach of the peace," as defined herein, that factual issue must first be decided by a jury. If the jury determines that plaintiff did not breach the peace at the Board meeting, then it must decide whether defendant intentionally violated the Open Meetings Act by expelling plaintiff contrary to MCL 15.263(6). MCL 15.273(1) provides, "A public official who intentionally violates this act shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing the action." An intentional violation of the Open Meetings Act requires specific intent. *People v Whitney*, 228 Mich App 230, 254; 578 NW2d 329 (1998). "Intent can be inferred from the totality of the circumstances." *Guardian Indus Corp v Dep't of Treasury*, 243 Mich App 244, 255; 621 NW2d 450 (2000). "[T]he most probative evidence of intent consists of objective evidence of what actually happened rather than descriptive evidence of the subjective state of mind of the actor." *Id*. Whether defendant intentionally violated the Open Meetings Act is a question for the jury to decide and the principles indicated above must govern its determination.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien

---

submissions by defendant in the lower court record in this case, but a copy of such agenda is not part of the lower court record. We are unable, therefore, to ascertain the contents of the agenda and discern whether it specified rules established and recorded by the Board as permitted under MCL 15.263(5). Regardless whether rules have been adopted, the mere violation of such cannot automatically constitute a "breach of the peace," and expulsion solely for not abiding by such rule, without more, violates MCL 15.263(6)'s prohibition against exclusion of any person from a public meeting.