MERCHANTS BANK & TRUST CO. v. WALKER.

(In Banc. Feb. 9, 1942. Suggestion of Error Overruled April 13, 1942.)

[6 So. (2d) 107. No. 34788.]

738

Henley, Jones & Woodliff, of Jackson, for appellant.

Morse, Bacon & Shands, of Jackson, for appellee.

Argued orally by **George Woodliff** and **W. S. Henley,** for appellant, and by **W. E. Morse,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This is an action by the appellant on a promissory note for $450 executed by the appellee to it. The appellant is a bank organized under the laws of this state and the appellee's defense to the note is that it is void under Section 4148, Code of 1930, for the reason that it was given for a balance due on a former note given by him to the appellant in payment for five shares of its corporate stock issued by it to him. The appellant denies that this was the consideration for the former note and its claim is that it was given for the loan of money from the appellant to the appellee to enable him to purchase five shares of the appellant's capital stock. The case was submitted to the jury on that issue resulting in a verdict and judgment for the appellee.

The appellant's complaints are that the court below erred (1) in admitting testimony for the appellee, (2) in refusing its request for a directed verdict in its favor, and (3) in not setting aside the verdict after it was rendered. The evidence discloses that the appellant at an undisclosed time after its organization and while it was a going concern "secured authority to increase its capital" and that the appellee agreed to take five shares of this new issue of the appellant's capital stock. According to the appellee, he gave the appellant his note for $1,300 in payment for the stock and it was delivered to him a week or more after the execution of the note. The appellant's evidence was in accord with and supports the contents of the following letter from the appellee to the appellant:

"Jackson, Miss.
"May 1st, 1930.
"The Merchants Bank & Trust Company,
"Jackson, Mississippi.
"Gentlemen:

"I am making a loan of $1300.00 with you in order to complete the purchase of five shares of your stock.

"I recognize that your bank cannot lend money with your stock as security, and I am writing this letter to authorize you to hold this stock and not deliver it to me until my indebtedness on account of the stock purchase is paid.

"Should I fail to pay said indebtedness, you can sell said stock to someone else.

"Yours very truly,
"B. E. Walker."

This letter was written by an officer in the bank at the time the note therein referred to was executed, and was signed by the appellee at the suggestion of this officer. The bank at that time held other notes of the appellee secured by collateral attached thereto, and according to the evidence of the bank this collateral was also pledged for the payment of this $1,300 note. This the appellee's

evidence denied. Whether the note for $1,300, a balance due on which is represented by the note sued on, was given to the appellant in payment for shares of its corporate stock was submitted to the jury which found on ample evidence therefor that it was so given. From this it follows that if Section 4148, Code of 1930, which provides, ''a note, obligation, or security of any kind given or transferred by any subscriber for stock in any corporation shall not be considered, taken, or held as payment of any part of the capital stock of the company,'' applies here the judgment appealed from must be affirmed. Ellis Jones Drug Co. v. Williams, 139 Miss. 170, 103 So. 810. The appellant says that this section does not apply to a note issued to a bank in payment for shares of its corporate stock, to a note that is given for stock issued after the corporation has become a going concern or to a note for corporate stock secured by adequate collateral. In support of the first of these contentions the appellant says that Chapter 100 of the Code of 1930, in which Section 4148 appears, applies to corporations other than such as have been withdrawn from its operations and that banking corporations have been so withdrawn for the reason that they are organized and governed by Chapter 85 of the Code, Section 3786 of which permits a bank to accept a promissory note in payment for subscription to its capital stock.

Beginning with the Code of 1892 banking corporations were organized under and governed by the same statutes that applied to other corporations. See Chapter 25, Code of 1892, and Chapter 24, Code of 1906. Section 4148, Code of 1930, appeared as Section 921 of Chapter 24, Code of 1906, and as Section 850 of Chapter 25, Code of 1892, and undoubtedly then applied to banking corporations. By Chapter 124, Laws of 1914, a State Banking Department was created for the purpose of supervising banks; by Section 28 thereof, now Section 3786, Code of 1930, the method for organizing banking corporations was set forth somewhat different from that for organizing corporations

generally under Chapter 100 of the Code. Neither that chapter nor its successor, Chapter 85 of the Code of 1930, contains any language excluding a banking corporation from other statutes applying to corporations generally, consequently they are still subject to such statutes unless they are in conflict with one or more of the sections composing Chapter 85 of the Code, which deals specifically with banks. The only section of Chapter 85 of the Code claimed by the appellant to be in conflict with Section 4148 thereof is the last clause of Section 3786 of Chapter 85, which provides that "such capital [referring to the capital of banks] shall be in money, commercial paper, bank furniture and fixtures, or the necessary bank building, including the lot or lots on which the building is situated, which lot or lots shall be unincumbered." The contention being that as a promissory note is commercial paper and since the capital of a bank may be in commercial paper, it necessarily follows that a bank may accept a promissory note in payment for a subscription to its capital stock. With this we are unable to concur. This clause of the section simply deals with what the capital of a bank shall consist and authorizes a bank to invest its capital after it acquires it in commercial paper, etc. This interpretation is reinforced by Section 3788 of that chapter, which provides that "all of the capital stock of every corporation engaged in the banking business shall be paid up in money before such corporation shall be authorized to commence business."

Nothing contained in Section 4148, or any other statute that has come under our observation, indicates that the legislature intended to restrict its application to stock issued by a corporation before it became a going concern —that it should not apply to additional stock authorized and issued after it became a going concern. Nor does anything in the section permit us to hold that it does not apply where the note given for the stock is secured by collateral other than the stock itself.

There was no error in admitting the appellee's evidence which contradicted the statement in his letter to the appellant that he was making a loan with the appellant in order to complete the purchase of the five shares of stock. This letter is not a contract but at most constitutes a mere admission of a fact and even if it were a contract the evidence does not simply contradict it but if true discloses that it was made in furtherance of an object forbidden by law. Mitchell v. Campbell, 111 Miss. 806, 72 So. 231; Lavecchia v. Tillman, 115 Miss. 288, 76 So. 266; 1 Rest. Cont. 238; 9 Wigmore on Evidence (3 Ed.), sec. 2406; 22 C. J. 1220.

Affirmed.

## DISSENTING OPINION.

**Anderson, J.**, delivered a dissenting opinion.

The statutes to be construed and applied are the last paragraph of Section 3786 and the first sentence of Section 3788, of Chapter 85, Banks and Banking, Code of 1930, and Section 4148 of Chapter 100, Corporations, Code of 1930, which are here copied in the order stated:

"Such capital shall be in money, commercial paper, bank furniture and fixtures, or the necessary bank building, including the lot or lots on which the building is situated, which lot or lots shall be unincumbered.

"All of the capital stock of every corporation engaged in the banking business shall be paid up in money before such corporation shall be authorized to commence business.

"A note, obligation, or security of any kind given or transferred by any subscriber for stock in any corporation shall not be considered, taken, or held as payment of any part of the capital stock of the company."

Section 4148 was in force long before our bank supervision laws were adopted, therefore banks were lifted out of the operation of that statute by the other two statutes referred to. Construing the last paragraph of Sec-

tion 3786 and the first sentence of Section 3788 together they mean that the capital stock of a bank may be subscribed for in commercial paper, personal property or real estate, but when the bank opens for business all such paper must have been turned into cash, otherwise it would not have the right to go on. Under the law real and personal property could be treated as cash. Lee, Rec'r v. Cutrer, 96 Miss. 355, 51 So. 808, 809, 27 L. R. A. (N. S.) 315, Ann. Cas. 1912B, 478. In that case the charter of the bank involved required that its capital stock should be paid for "in cash or in monthly installments." Cutrer paid for his in legal services. The court held that the charter did not preclude payment for the stock in property or services. As to the commercial paper given for stock it had to be converted into cash by suit or otherwise before the bank could open for business. In other words, the paper itself could not be accepted as payment for the stock. Therefore the note sued on could not have been accepted by the bank as payment for Walker's stock although the evidence showed without any substantial conflict that it was commercial paper secured and worth its face value. To illustrate, applying those principles to a bank being organized: The capital stock proposed is $100,000. "A" has a house and lot suitable for the banking business. He and the organizers of the bank agree that its fair value is $25,000. "A" is willing to give and the organizers are willing to receive a conveyance of the building and lot in payment for $25,000 par value of its capital stock. "B" owns the necessary bank furniture and fixtures which he is willing to transfer to the bank in payment for stock. He and the organizers agree that a fair price is $10,000. They agree that "B" shall transfer them to the bank in payment of stock of that par value. The balance of the stock, $65,000 par value, is subscribed for by numerous persons payable in the form of commercial paper. Under the law when the subscribed real estate and personal property is conveyed and transferred to the bank

the agreed value is treated as so much cash. Before beginning business, however, all of the commercial paper must be converted into cash at its face value by necessary suit or otherwise. If it turns out that the organizers are never able to so convert the subscriptions for the stock into cash the scheme must be abandoned and the cash paid on all subscriptions must be returned to the subscribers.

The same principles, of course, apply to a bank which is a going concern and issuing additional stock under the law. It cannot use additional stock until it is paid for in cash.

The bank ought to have had a directed verdict.