478 So.2d 269 (1985)
BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING, et al.,
v.
MISSISSIPPI PUBLISHERS CORPORATION.
No. 56167.
Supreme Court of Mississippi.
October 2, 1985.
Rehearing Denied November 6, 1985.
*271 Ed Brunini, Sr., John M. Loper, George P. Hewes, III, Brunini, Grantham, Grower & Hewes, Jackson, for appellant.
W. Scott Welch, III, Luther T. Munford, John C. Henegan, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellee.
Leonard D. Van Slyke, Jr., Janice Holley Parsons, Thomas, Price, Alston, Jones & Davis, Jackson, Benjamin E. Griffith, Jacobs, Griffith, Eddins & Povall, Cleveland, Stone D. Barefield, Hattiesburg, for amicus curiae.
En Banc.
PRATHER, Justice, for the Court:
Openness in government is the statutorily declared public policy of this state. This appeal challenges the application of that policy to the Board of Trustees of State Institutions of Higher Learning. The basis of this challenge lies in the Board of Trustee's assertion that, as a constitutionally created board, it is prevented from discharging its constitutional responsibilities by the "open meetings" statute and that in certain sensitive areas the open meetings statute has no application to it. This appeal, *272 therefore, addresses state constitutional and statutory interpretations.
In the Chancery Court of Hinds County, Mississippi Publishers Corporation, a Mississippi corporation, filed and was granted an injunction against the Board of Trustees of State Institutions of Higher Learning (hereafter referred to as the Board) and its individual members for violation of the "Open Meetings" Act, the Board of Trustees powers act, and the freedom of the press constitutional guarantee. The College Board appeals from this adverse ruling; this Court affirms the chancery court action as properly interpreting Mississippi constitutional and statutory provisions, with only minor exceptions.

I.
On September 20, 1983, Mississippi Publishers Corporation filed suit against the Board of Trustees of State Institutions of Higher Learning and the individuals of the Board in their official capacities, alleging that the Board had violated certain provisions of the Open Meetings Act, Miss. Code Ann. § 25-41-1 et seq. (Supp. 1984) (hereinafter referred to as Open Meeting Act) and the Board of Trustees Powers Act, Miss. Code Ann. §§ 37-101-1 to 283 (Supp. 1984) (hereafter referred to as the powers act) and the constitutional guarantee of freedom of the press. Miss. Const. art. 3, § 13. U.S. Const. amend. I.
Mississippi Publishers alleged the Board violated the open meetings act by meeting in executive session in instances not permitted by the statute, by going into executive session without making certain allegedly necessary preliminary findings, and by committing various minutes and record-keeping violations. Mississippi Publishers later amended its complaint to include allegations that it had been denied its constitutional rights through the Board's exclusion of one of the Mississippi Publishers' employees from its November, 1983 luncheon with student leaders. Mississippi Publishers requested writs of mandamus and preliminary and permanent injunctive relief enjoining future violation of the statutes. The College Board sought a dismissal of the suit, but the chancery court granted a preliminary injunction which injunction was later made permanent with one exception. The material designated as the academic program review was this exception.
A post-trial motion for attorney's fees to Mississippi Publishers was disallowed by the chancellor. Facts supporting these pleadings will be detailed as the opinion develops.

II.
The Board assigns the following as error committed by the Chancery Court of the First Judicial District of Hinds County, Mississippi in its adjudication of the case below.
(1) The lower court erred in holding that the Open Meetings Act is constitutional as applied to the Board insofar as the application of the Act prevents the Board from managing and controlling the Institutions of Higher Learning to the best advantage of the people of this state.
(2) The lower court erred in holding that the Board has no power to promulgate additional exemptions to open meetings.
(3) The lower court erred in sustaining the plaintiff's objection to the testimony of Ben Stone.
(4) The lower court erred in holding that the Board's Wednesday-morning sessions with institutional executive officers are "meetings" within the meaning of the Act.
(5) The lower court erred in holding that the Board's luncheons with student government officials are "meetings" within the meaning of the Act.
(6) The lower court erred in holding that the Board is required to record, by individual member, the vote taken to go into executive session.
(7) The lower court erred in requiring the Board to make certain findings a part of its records prior to entering into executive session concerning personnel and litigation matters.
*273 (8) The lower court erred in defining the term "personnel" in a manner more restrictive than that found in the Act.
(9) The lower court erred in finding that the Board had used executive sessions to defeat the purpose of the Act by conducting telephone calls.
Mississippi Publishers Corporation cross-appeals and assigns the following error committed by the Chancery Court of the First Judicial District of Hinds County, Mississippi in its adjudication of the case below:
Because Mississippi Publishers was the prevailing party on its claims under the First and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, the lower court erred in denying Mississippi Publishers any attorney's fees under 42 U.S.C. § 1988.

III.
Is the constitutionally created College Board exempt from the statute relating to open meetings of public bodies?
The Board of Trustees of the State Institutions of Higher Learning was constitutionally created by the enactment of Article 8 § 213-A of the Mississippi Constitution in 1942, and is, in pertinent part as follows:
The State institutions of higher learning ... shall be under the management and control of a Board of Trustees to be known as the Board of Trustees of state institutions of higher learning, the members thereof to be appointed by the Governor of the State with the advice and consent of the Senate. The Governor shall appoint only men and women ... of the highest order of intelligence, character, learning, and fitness for the performance of such duties, to the end that such Board shall perform the high and honorable duties thereof to the greatest advantage of the people of the State of such educational institutions, uninfluenced by any political considerations ... for a period of twelve years... .
Such Board shall have the power and authority to elect the heads of the various institutions of higher learning, and contract with all deans, professors and other members of the teaching staff, and all administrative employees of said institutions for a term not exceeding four years; but said Board shall have the power and authority to terminate any such contract at any time for malfeasance, inefficiency or contumacious conduct, but never for political reasons.
Nothing herein contained shall in any way limit or take away the power of the Legislature had and possessed, if any, at the time of the adoption of this amendment, to consolidate or abolish any of the above named institutions.
The history of the passage of this constitutional amendment is set forth in State v. Board of Trustees of Institutions, 387 So.2d 89 (Miss. 1980), when it was acknowledged:
[T]hat for many years those institutions had been "political footballs" of the politicians then in power. At one time, the accreditation was taken from most of the institutions because of the action of whomever was in power politically at that time. By the year 1944, the people of the state and the members of the Legislature were ready to cure the previous political diseases. Consequently, section 213-A was approved by the Legislature and the electorate and became a part of the Constitution without subsequent change or amendment.
Id. at 91.
The political ramification to which this quotation referred was the gubernatorial attempt to control the College Board and interfere with the integrity of its management. G. Sansing, "An Historical Background of Events Leading to a Constitutional Board of Trustees" in Mississippi Law Research Institute, An Analysis of the Law of Separation of Powers Applicable to the Government of Higher Education 1-14 (1978).
By subsequent legislative enactment, the Board was given wide latitude and discretion in decisions concerning its management and control of the universities and *274 colleges. See Miss. Code Ann. § 37-101-1 through 15 (Supp. 1984). Miss. Code Ann. § 37-101-15(c) sets forth these powers to include:
The board shall exercise all the powers and prerogatives conferred upon it under the laws establishing and providing for the operation of the several institutions herein specified. The board shall adopt such bylaws and regulations from time to time as it deems expedient for the proper supervision and control of the several institutions of higher learning, insofar as such bylaws and regulations are not repugnant to the constitution and laws, and not inconsistent with the object for which these institutions were established. The board shall have power and authority to prescribe rules and regulations for policing the campuses and all buildings of the respective institutions, to authorize the arrest of all persons violating on any campus any criminal law of the state, and to have such law violaters [sic] turned over to the civil authorities.
Thus, the Board exercises statutory duties of a wide scope and magnitude administering and governing eight universities of this state, in addition to the Research and Development Center, and the Gulf Coast Research Laboratory, in areas of finance allocation, physical facilities, degree programs and policy, admission standards, employment and student problems. Because of the breadth of its responsibility and the impact of its decisions upon Mississippi citizens, the Board asserts that certain topics are of such a sensitive nature as to exclude their public discussion.
In furtherance of this attitude, the Board adopted a resolution on January 19, 1984, to amend the bylaws and policies of the Board by adding proposed exceptions to its open meetings in addition to those provided by the Legislature in § 25-41-1 et seq. Miss. Code Ann. (Supp. 1984).[1] These code sections are generally referred to as the "open meeting" law, and specifically section 25-41-7(4) provides those occasions when a public body may hold an executive session.
These statutorily permitted instances are:

*275 (4) A public body may hold an executive session pursuant to this section for one or more of the following reasons:
(a) Transaction of business and discussion of personnel matters or the character, professional competence, or physical or mental health of a person.
(b) Strategy sessions or negotiations with respect to prospective litigation, litigation or issuance of an appealable order when an open meeting would have a detrimental effect on the litigating position of the public body.
(c) Transaction of business and discussion regarding the report, development or course of action regarding security personnel, plans or devices.
(d) Investigative proceedings by any public body regarding allegations of misconduct or violation of law.
(e) Any body of the Legislature which is meeting on matters within the jurisdiction of such body.
(f) Cases of extraordinary emergency which would pose immediate or irrevocable harm or damage to persons and/or property within the jurisdiction of such public body.
(g) Transaction of business and discussion regarding the prospective purchase, sale or leasing of lands.
(h) Discussions between a school board and individual students who attend a school within the jurisdiction of such school board or the parents or teachers of such students regarding problems of such students or their parents or teachers.
(i) Transaction of business and discussion concerning the preparation of tests for admission to practice in recognized profession.
(j) Transaction of business and discussions or negotiations regarding the location, relocation or expansion of a business or an industry.
(k) Transaction of business and discussions regarding employment and termination of employees. The exemption provided by this paragraph includes the right to hold closed meetings concerning employees as such exemption relates to their deletion from any budget subject to approval of the public body. Final budgetary adoption shall not be taken in executive session.
Although contending that any additions to the legislative mandate in section 25-41-7(4) are prohibited, the appellee complains of two particular instances.
First, the Board resolution in subsection 4(k) and 4(n) permits executive sessions with its eight institutional heads. The Board argues that to receive campus problems in private promotes a full, frank, and open discussion of sensitive areas without adverse or premature publicity. Its witnesses testified to the freedom of information exchange in closed session as opposed to restrained and inhibited reports "in the sunshine". Board members testified to the benefit in decision making with a more detailed, private communication.
Secondly, the Board resolution in subsection 4(j) permits the withholding of its academic program review materials for its eight universities. The reasons for the secrecy of these materials were several: (1) the candor of the participants in speaking with the outside consultants and Board staff; (2) the "friendly" competitiveness among the universities for students; (3) the protection afforded to "marginal" programs before improvement in that program can be achieved.
In summary, the Board's position is that, as a constitutionally created board with constitutional and statutory mandates to govern the institutions, their constitutional duties conflict with the statutory requirement of the open meeting law. Therefore, the Board asserts the statute has to yield in order for it to effectively function and perform its constitutional duty.
The position taken by the Board is one of autonomy. We do not reach the question of the autonomy of the board, we only answer that question which is presented to us in this appeal. Clearly the intent and purpose of giving the Board constitutional status was to remove it from political interference, *276 but not to make it a separate branch of government. Nor does the fact that a statutory board becomes constitutionally grounded remove its trusteeship. Stated differently, the constitutional provision of Article 8, § 213-A does not strip the Board of its duties as trustees. Trustees by their very definition are under a duty to disclose to the beneficiary. Restatement of Trusts 2d § 173.
Consistent with these principles, the Legislature requires the Board to account publicly to the beneficiaries of its trust. The Board's power act § 37-101-15 sets forth the powers and duties of the Board. The Board is required to submit to audit by the State Department of Audit, § 37-101-15(d), to report expenditures and personnel to the Legislature, § 37-101-15(e), and to keep minutes and records which shall be open for inspection by any citizen of the State, § 37-101-15(g).
Thus, the question is presented as to whether the general open meeting law applies to this constitutional Board. This Court holds that it does.
Although the Board is empowered with management and control of the State Institutions of Higher Learning State v. Board of Trustees of Institutions, 387 So.2d 89 (Miss. 1980), the Board is not beyond the lawmaking power of the Legislature insofar as the general statute governing open meetings. Nor is the Board's power to manage and control unconstitutionally infringed upon, interfered with, or diminished by submission to the requirement of open meetings; openness, however, may make its duty less convenient or pleasant.
In Mississippi State Tax Commission v. Flora Drug Co., 167 Miss. 1, 148 So. 373, 376 (1933) this Court said:
If a statute has a reasonable relation to a governmental purpose, and is calculated to carry out some governmental design, the courts cannot strike it down as being arbitrary, although members of such courts might think the system was inconvenient, and that a better system could be devised. Statutes cannot be declared void merely because they are inconvenient and burdensome, if they are calculated to further governmental purposes. See also Albritton v. City of Winona, 181 Miss. 75, 178 So. 799 (1938).
It is also noted that the insulation of the Board members with twelve year terms help to promote their unfettered management of the universities from political interference and difficult and impacting decisions.
But the open meeting legislation is no intrusion into the decision-making power of the Board. The Open Meetings Act was enacted for the benefit of the public and is to be construed liberally in favor of the public. "Openness in government is the public policy of this State." Mayor & Alderman v. Vicksburg Printing & Publishing Co., 434 So.2d 1333 (Miss. 1983).
This Court acknowledges that openness in sensitive areas is sometimes unpleasant, or difficult, or competitive, and sometimes harmful. Nevertheless, in a democratic society the public's business must be open to maintain the public's confidence in its officials, to make intelligent judgments, and to select good representatives. Athens Observer Inc. v. Anderson, 245 Ga. 63, 263 S.E.2d 128 (1980). Open Meetings Law: An Analysis and a Proposal, 45 Miss.L.J. 1151 at 1160 (1974).
The right of the public to be present and to be heard during all phases of enactments by boards and commissions is a source of strength in our country. During past years tendencies toward secrecy in public affairs have been the subject of extensive criticism. Terms such as managed news, secret meetings, closed records, executive sessions, and study sessions have become synonymous with "hanky panky" in the minds of public-spirited citizens. One purpose of the Sunshine Law was to maintain the faith of the public in governmental agencies. Regardless of their good intentions, these specified boards and commissions, through devious ways, should not be allowed to deprive the public of this inalienable right to be present and to be *277 heard at all deliberations wherein decisions affecting the public are being made.
Board of Public Instruction of Broward Co. v. Doran, 224 So.2d 693, 699 (Fla. 1969).
"A popular government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or Tragedy; or perhaps both." The Writings of James Madison 103 (Hunt ed. 1910).
Nothing in the text of section 213-A or its companion statute, Miss. Code Ann. § 37-101-1 through 15 suggests that it places the Board of Trustees beyond the reach of statutes which have general application to all state agencies. This Court therefore holds that the Open Meeting Law, § 25-41-1 et seq. are constitutional as applied to the Board of Trustees of the State Institutions of Higher Learning.
Having made that determination, the Court affirms the chancery court action insofar as it determined that the attempt of the Board to add additional exemptions to the open meeting requirements of § 25-41-7(4) Miss. Code Ann. (Supp. 1982) was beyond its power. Such enlargement was repugnant and contrary to the intent of the open meetings act as well as the express words that an executive session "shall be limited" to the statutory enumerated exemptions of subsection (4). The proper forum to address additional exemptions to the Open Meeting Law is the state legislature.
This interpretation is in agreement with the majority of other jurisdictions of this country that have addressed the question. University Boards in practically every other state where the question has been addressed have been subjected to open meetings law.
The constitutional provisions are collected in the article by Sansing supra at 81-87. That study lists Arizona, Louisiana, Michigan, Montana and Oklahoma as states where the board has been granted a greater degree of autonomy than has the Mississippi board. Id. The cases holding constitutional boards subject to open meetings' laws are as follows: University of Alaska v. Geistauts, 666 P.2d 424 (Alaska 1983) (tenure evaluation must be conducted in open meeting); Rosenberg v. Arizona Board of Regents, 118 Ariz. 489, 578 P.2d 168, 172-173 (1978) (state board of regents and tuition appeals committee of Arizona State University must be open); Phillips v. Board of Supervisors of Louisiana State University, 391 So.2d 1217 (La. App. 1st. Cir.1980) (board of supervisors of state university); Ridenour v. Board of Education, 111 Mich. App. 798, 314 N.W.2d 760 (1982) (district junior college board); Regents of the University of Michigan v. Washtenaw County Coalition Against Apartheid, 97 Mich. App. 532, 296 N.W.2d 94 (1980) (University of Michigan Board of Regents); Tribune Publishing Co. v. Curators of the University at Missouri, 661 S.W.2d 575, 585 (Mo. App. 1984) (alleged "social meeting" of Board of Curators of the University of Missouri); Holden v. Board of Trustees of Cornell University, 80 App.Div.2d 378, 440 N.Y.S.2d 58 (3d Dept. 1981) (Board of Trustees of Cornell University); Carl v. Board of Regents of University of Oklahoma, 577 P.2d 912, 915 (Okla. 1978) (University of Oklahoma Board of Regents and Medical School Admissions Board). See also Arkansas Gazette Co. v. Pickens, 258 Ark. 69, 522 S.W.2d 350 (1975) (student affairs committee of state university board of trustee; People ex rel. Byron v. Board of Trustees of Southern Illinois University, 90 Ill. App.3d 88, 45 Ill.Dec. 606, 412 N.E.2d 1188 (1980) (Board of Trustees of SIU); Greene v. Athletic Council of Iowa State University, 251 N.W.2d 559 (Iowa 1977) (state university athletic council, which exercised powers of state board of regents); Courier-Journal & Louisville Times Co. v. University of Louisville Board of Trustees, 596 S.W.2d 374 (Ky. 1980) (board of directors of private, nonprofit corporation created by state university board of trustees where the board of trustees constitutes a quorum of the board of directors).
This Court does not accept the premise that the people of this State cannot be *278 entrusted with less disclosure than that of citizens of other states.

IV.
The determination of these issues resolve most of the assignments of error. However, the definition of a "meeting" is addressed by several assignments and we now define this term. The trial court held that sessions with institutional heads were "meetings" within the meaning of the open meetings act.
The statutory definition of "meeting" under Mississippi's Open Meeting Act is:
"Meeting" shall mean an assemblage of members of a public body at which official acts may be taken upon a matter over which the public body has supervision, control jurisdiction, or advisory power.
Miss. Code Ann. § 25-41-3(b) The Board's position is that no "official" acts are undertaken during their informal meetings with the presidents and staff; however, it is undisputed in the record by the Board members testimony that these sessions are invaluable aids to factfinding by the Board.
The expressed legislative declaration of § 25-41-1 (Supp. 1982) answers the question:
It being essential to the fundamental philosophy of the American constitutional form of representative government and to the maintenance of a democratic society that public business be performed in an open and public manner, and that citizens be advised of and be aware of the performance of public officials and the deliberations and decisions that go into the making of public policy, it is hereby declared to be the policy of the State of Mississippi that the formation and determination of public policy is public business and shall be conducted at open meetings except as otherwise provided herein. (Emphasis added).
Under authority of this declared legislative intent, this Court holds that all the deliberative stages of the decision-making process that lead to "formation and determination of public policy" are required to be open to the public. This holding would affirm the chancellor's finding, and our holding, that the informal session with the presidents and staff are subject to the open meeting act.
The appellees complained of the exclusion of its employee from a luncheon between the Board and the student body presidents of the colleges and universities. The Board contended that it was purely a social affair at which no official acts transpired. From the testimony, the chancellor found otherwise. A written program was distributed, and items of business were discussed. The record does not clearly state whether public funds were used to pay for the lunch. But the finding of the chancellor was that these discussions were "deliberations" that pertained to the "formation of public policy" and were official acts. This Court affirms that finding.
This Court therefore reiterates the words of the statute: a meeting is within the open meeting act when there is an assemblage of members of a public body at which official acts may be taken. Official acts include actions relating to formation and determination of public policy. Purely social functions are not covered. Miss. Code Ann. § 25-41-17 (Supp. 1984). However, factors to consider in making a determination of whether an activity is business or social include: the activity that takes place at the function, the advance call or notice given the members, an agenda, the claim for per diem and travel expenses by the Board members, and other pertinent factors.
Another item addressed by this appeal is the use of telephone polls among the members to conduct official acts. The chancellor reiterated the use of telephone polls as a device to circumvent the open meetings act. This Court affirms this ruling insofar as such telephone polls in fact circumvent the act by preventing public disclosure of deliberation and conduct of business.
*279 This Court, however, does not prohibit the recording of final votes by telephone, where such vote is reduced to public record and all deliberation prior to the final vote has taken place in accordance with the open meetings act.
This Court affirms the chancery court in its determination of and definition of "meetings" under the Open Meetings Act.

V.
The chancery court granted a temporary stay to Board discussions relative to the academic program review. The academic program review is an evaluation of the curriculum offerings in more than eight hundred separate programs at the eight state supported universities. The review is accomplished by first, a departmental self-study, and then, an appraisal and recommendation from an outside consultant for ultimate action by the College Board on that program's future. The rating for the program could be termed excellent, for continued Board support, or could be noted as marginal with deficiencies, for improvement or elimination.
The Board's testimony presented two major reasons for conducting this business in private and for seeking court approval for continuing that practice. First, the Board contends that the participants in academic program review do not speak with candor with the consultants, or the Board, or its staff in the open. The lack of candor prevents, not the functioning of the Board, but the ability to function effectively. Their decisions are made in a vacuum because of a lack of reliable information. Secondly, the Board asserts the competitiveness among the various universities for students warrants conducting business in private.
Notwithstanding these arguments, this Court weighs the negative aspects proposed by the Board against the balance of the statutorily declared public policy of openness. Mayor and Aldermen v. Vicksburg Printing and Publishing Company, supra. Applying this balancing test, this Court concludes that the academic program review is a legitimate inquiry into the operation of a public body. The students and parents of students attending these universities can better evaluate the program suited to their educational needs with published information correctly reflecting the standing of that program. The publication of such information would dispel false rumors and innuendos. The competitiveness of the universities for student enrollment would appear to be reduced by removal of restrictions on program review.
The public policy of openness has been clearly expressed by the legislature. Public access to information is the overriding consideration in this Court decision  the public can evaluate the expenditure of public funds, the efficient and proper functioning of its institutions, and foster, through openness, confidence in governmental bodies. The chancery court decree opening academic program review is affirmed, and the temporary stay issued pending this appeal is dissolved.

VI.
Did the lower court err in requiring the Board to make certain findings a part of its record prior to entering into executive session concerning personnel and litigation matters?
The Board contends that the lower court has imposed conditions in the judgment that are more restrictive than the Act requires. The chancellor required the Board to adopt and record in its minutes reasons which were consistent with the statutory language of the Open Meetings Act. The Board notes an alleged inconsistency within the Act, in that § 25-41-7 provides:
The total vote on the question of entering into an executive session shall be recorded and spread upon the minutes of such body. (Emphasis added).
However, § 25-41-11, relating to minute keeping provides in pertinent part:
Minutes shall be kept ... and a record, by individual member, of any votes taken; ... (Emphasis added).
*280 Although the verbage of the two sections are different, this Court finds no conflict between them and finds that the legislative intent of the two sections can be easily harmonized. The total vote can only be reached by taking of the individual member's vote. Therefore, the legislative intent of these sections consistent with the purpose of the legislation dictates the recording of the total vote, by the individual member's expression, in the minutes.
This Court finds no error in this assignment.

VII.
Did the lower court err in defining the term "personnel" in a manner more restrictive than that found in § 25-41-7(4)(a) of the Act?
A public body may enter into executive session for certain specified reasons set forth in detail in this opinion previously. (See subdivision III. hereof). One such exemption from public hearing is the "transaction of business and discussion of personnel matters or the character, professional competence, or physical or mental health of a person." § 25-41-7(4)(a) Miss. Code Ann. 1972.
The lower court defined "personnel" matters as dealing with "hiring, promotion, demotion, dismissal, assignment or resignation ... of any individual public employee."
The Board contends that the above definition prompted them to promulgate their proposed exemption (k) in their resolution regarding executive sessions, so that it could meet with university presidents on matters concerning their performance which might not fit into the definition set out by the lower court or exemptions of the Act. The Board further requests that the word "personnel" be defined to include more than one person and that matters concerning personnel "groups" may be discussed either under section 25-41-7(4)(a) or section 25-41-7(4)(k).
This Court adopts the exemptions set forth in section 25-41-7(4) as the only permitted exemptions to the open meetings law. This Court agrees that the term "personnel" cannot be interpreted to rob the open meetings act of its meaning. However, to state that "all Board discussions with institutional executive officers do not involve `personnel matters'" is to narrow the verbage of the Act.
The term "personnel" is not defined within the Act. When a word is statutorily undefined, its use is of its common and ordinary acceptation and meaning. Miss. Code Ann. § 1-3-65 (Supp. 1972). It appears that this Court can only adopt the ordinary definition of the term "personnel," in the absence of a statutory definition.
Any further definition must be addressed by this Court on a case by case development guided by our general rules of statutory definition together with the legislative intent of the Act and its declared policy. To the extent that the chancellor's comments are inconsistent with this opinion, he is reversed on the definition of personnel. This Court adopts the verbage of the Act regarding "personnel" matters.

III.
Did the chancellor err in denying Mississippi Publishers attorney's fees under 42 U.S.C. § 1988 on its cross-appeal?
The chancellor found that the exclusion of Coleman Warner from the Board luncheon meeting constituted a violation of plaintiff's federal constitutional right to equal protection of the laws. U.S. Const.Amend. XIV. Additionally, Mississippi Publishers asserts a claim under a federal statute. 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
*281 Mississippi Publishers position is that, because it is entitled to recover substantively under Section 1983, it is further entitled under 42 U.S.C. § 1988 to an award of attorney's fees as a part of costs.
The allowance of attorney's fees in such cases is authorized in 42 U.S.C. § 1988 which reads in pertinent part:
In any action or proceeding to enforce the provision of [section] ... 1983 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.
The United States Code section which allows attorney's fees to the prevailing party in actions enforcing denial of civil rights under § 1983 has been held to apply to state courts. The rule has been stated that fees in state court actions are allowable unless special circumstances would render such an award unjust. Carmel v. Borough of Hillsdale, 178 N.J. Super. 185, 428 A.2d 548 (1981); Thiboutot v. State, 405 A.2d 230 (Me. 1979) affirmed 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555; Viglietta v. Blum, 108 Misc.2d 516, 437 N.Y.S.2d 625 (1981); Ashley v. Curtis, 67 A.D.2d 828, 413 N.Y.S.2d 528 (1979); Royer v. Adams, 121 N.H. 1024, 437 A.2d 316 (1981); Caputo v. City of Chicago, 113 Ill. App.3d 45, 68 Ill. Dec. 843, 446 N.E.2d 1240 (1983) (state courts should allow attorney's fees only where federal constitutional grounds as alleged).
Mississippi Publishers cite Miller v. Amusement Enterprises, Inc., 426 F.2d 534 (5th Cir.1979), a Louisiana case which states that unless there are special circumstances which would justify a court in not awarding attorney's fees, reasonable attorney's fees should be allowed the prevailing party in a § 1983 action. In Holmes v. Orchard Machinery Corp., 75 F.R.D. 546 (D.C.Miss. 1977), however, a District Court of Mississippi held that allowance of model construction costs, attorney's fees and related items is a matter which rests largely in the discretion of the trial court, and should only be made when required in the interest of justice. See also Fairley v. Patterson, 493 F.2d 598 (5th Cir.1974); Norwood v. Harrison, 581 F.2d 518 (5th Cir.1978).
This Court analyzes this question by reference to Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), a class action suit for racial discrimination wherein attorneys filed for fees under section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-5(k).
The Fifth Circuit permitted allowance of attorney's fees, but remanded for determination of the amount in accordance with the following guidelines:
(1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases.
In a 1980 decision, Neely v. City of Grenada, 624 F.2d 547 (5th Cir.1980), the Fifth Circuit vacated a Judge Keady opinion, where Judge Keady awarded counsel the maximum local rate in a racial discrimination suit although the attorneys requested fees in excess of that amount. The Fifth Circuit looked to the record and noted the submission of numerous affidavits by appellants' counsel attesting to: normal fees for attorneys of appellant's reputation and experience for complex, noncontingent federal litigation, the contingent nature of the fee, and the scope of the litigation, the relief and the issues; and held that appellants were entitled to compensation at a rate which would reflect the complexity of the case. Appellees introduced no contradictory evidence.
In the case sub judice the record contains no affidavit to support the request for the amount of attorney's fees. Nor is there *282 any documentation to show the time spent in preparation and litigation of this claim or the complexity of such representation.
Notwithstanding the above analysis, this decision is based upon state statutory violations. Consequently, this Court's decision does not rely upon Federal law. In other words, we hold Mississippi Publishers is entitled to no relief under Section 1983. If a plaintiff is entitled to no relief under Section 1983, it follows from the clear language of Section 1988 that attorney's fees may not be allowed. Therefore, this Court affirms the action of the trial court in the exercise of its discretion to disallow attorney's fees.

IV.
This decision opens the College Board to the open meeting law, and it promotes the declared public policy of this state. Openness in the conducting of public business by public bodies is wholesome.
In conclusion, this Court affirms the action of the chancery court, with the minor exception of the personnel definition, and dissolves the temporary stay on academic program review. The cross-appeal relating to denial of attorney's fees is affirmed.
AFFIRMED IN PART, REVERSED IN PART.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and HAWKINS, DAN M. LEE, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON, J., not participating.
NOTES
[1] The text of Section 4 of the Board Resolution is set forth in full, with the exception of subsections 4(a) through 4(i), which exceptions tract the Open Meetings Act. Subsections 4(j), et seq., are the additions to the Act and are as follows:

(j) Hearing or receiving the presentation of oral or written reports of outside consultants, members of the Board staff, or the faculty or staff of an institution of higher learning, regarding the evaluation of a department, course of study or academic discipline, which could result in said department, course of study or academic discipline being modified, altered or terminated, and which report is being considered at a time prior to a final recommendation being made as to the status of said department, course of study or academic discipline.
(k) Expressions by the Board of Trustees of its frank and candid appraisal and evaluation of individual actions of the heads of the various institutions under its management and control.
(l) Preparatory sessions with respect to the appearance by a member of the Board of Trustees, its staff or one of the institutional heads before the Mississippi Legislature, a committee thereof, or the Commission of Budget and Accounting.
(m) Matters regarding the ethics, morality or legality of the conduct of students, faculty, staff or other personnel under the jurisdiction of the Board of Trustees, at a time when the matter under consideration is still in the investigative stage, no conclusions have been reached and, in the judgment of the Board of Trustees, release of such information would prejudice the investigation or bring into question the integrity, morality or honesty of the persons involved.
(n) Matters under consideration by an institutional head and presented to the Board for its reaction and input, as to which no final decision has been made by the institutional head on a recommendation to be made to the Board of Trustees. This includes such matters as raising admission standards, merging departments, or the phasing out or termination of a department, course of study or particular academic discipline.
(o) Requests for the appropriation of funds other than through the formula by which funds are allocated among the several institutions, such requests being made as a result of shortages of operating funds due to a sudden and unanticipated change in circumstances, such as a sizeable change in enrollment.