914 So.2d 1284 (2005)
Linder HOWZE-CAMPBELL, Appellant
v.
MOUND BAYOU SCHOOL DISTRICT, Appellee.
No. 2004-CC-02431-COA.
Court of Appeals of Mississippi.
November 22, 2005.
*1285 Chester D. Nicholson, Gulfport, Gail Nicholson, attorneys for appellant.
Sanford E. Knott, Jackson, attorney for appellee.
EN BANC.
LEE, P.J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. Linder Howze-Campbell was appointed Superintendent of Education in the Mound Bayou School District (MBSD) for a period beginning January 1, 2000, and ending December 31, 2002. Campbell was notified by MBSD that her contract would be terminated on May 1, 2002. MBSD cited as reasons for her termination certain deficiencies in the I.T. Montgomery Elementary School's (elementary school) gifted education program and alleged violations of federal law regarding MBSD's mishandling of confidential records concerning the gifted program.
¶ 2. Pursuant to Campbell's request, a hearing on the matter was held May 21, 2002, and reconvened on June 20, 2002. Campbell received notice on July 29, 2002, that the MBSD Board upheld its decision to terminate her employment. Campbell subsequently appealed to the Chancery Court of Bolivar County. On October 25, 2004, the chancellor affirmed the decision of MBSD. Aggrieved, Campbell now appeals to this Court asserting the following issues: (1) there was no substantial evidence presented at the hearing to support her termination; (2) a board member of the MBSD should have recused herself from the proceedings because of prejudice against Campbell; and (3) the MBSD Board had an illegal public meeting prior to her hearing.

STANDARD OF REVIEW
¶ 3. Our standard of review in cases relating to the termination of a school employee is the same as the chancery court:
(3) The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was:
(a) Not supported by any substantial evidence;
(b) Arbitrary or capricious; or
(c) In violation of some statutory or constitutional right of the employee.
Miss.Code Ann. § 37-9-113 (Rev.2001); Harris v. Canton Pub. School Bd. of Educ., 655 So.2d 898, 901 (Miss.1995).

DISCUSSION OF ISSUES

I. WAS SUBSTANTIAL EVIDENCE PRESENTED AT THE HEARING TO SUPPORT CAMPBELL'S TERMINATION?
¶ 4. In her first issue on appeal, Campbell argues that the evidence presented at the hearing to support her termination was not substantial. In order for a school district to receive funding for gifted education programs, there are numerous criteria the district must meet and maintain to remain eligible for funding. According to Conrad Castle, the Mississippi Department of Education coordinator for *1286 gifted programs, his office received a "Statement of Assurances" signed by Campbell stating that twenty-three students from grades two through six were participating in the MBSD's gifted program. However, Castle recommended that funding be withdrawn as no eligibility records or any other documentation proving the existence of a gifted program were produced. Subsequently, on April 4, 2002, a representative from the State Department of Education, Judy Couey, made an on-site visit to the MBSD to verify the existence of the MBSD's gifted program. During her visit, Couey stated that she could find no evidence or documentation to prove the existence of a gifted program. Couey asked to view samples of work by the gifted program students, but no samples could be produced. Couey also attempted to speak with students in the program, but was told that they were not available.
¶ 5. Furthermore, Couey reviewed a document dated April 3, 2002, and titled "Gifted Students Report" indicating that there were no students currently in the program. Couey did find records for students who were not eligible for the gifted program because they were too old, as the students participating must be in grades two through six. Couey also looked for records of the program in Campbell's office but could find no evidence of a current gifted program.
¶ 6. Linda Bell Robinson, the principal of the elementary school, stated that she was unaware of the existence of a gifted program at her school. Robinson also testified that Zinnia Howze was not teaching a class during the 2001-2 school year. Zinnia Howze is the gifted teacher at the elementary school and is also Campbell's sister. The money funded for the gifted program includes the appointment of a teacher to serve in the program. As a result, withdrawing funding for the gifted program also withdraws the funding for the gifted teacher, in this case, Zinnia Howze.
¶ 7. Robinson also stated that, after Couey's visit, she began to receive visits from angry parents wanting to know why Howze asked their children to lie about being in a gifted program.
¶ 8. We note Campbell's argument that the gifted program represents "a minuscule figure in terms of the overall education effort in this school district" or, more specifically, "one-half of one percent of the teaching resources." We are unimpressed with this statement and find that there was substantial evidence before the board to support Campbell's termination. This issue is without merit.

II. WHETHER A BOARD MEMBER OF THE MBSD SHOULD HAVE RECUSED HERSELF FROM THE PROCEEDINGS BECAUSE OF PREJUDICE AGAINST CAMPBELL.
¶ 9. In her second issue, Campbell argues that Beverly Howard, a board member of the MBSD, should have recused herself from the proceedings. There is a presumption of honesty and integrity given to a board member serving in an adjudicatory capacity. Byrd v. Greene County Sch. Dist., 633 So.2d 1018, 1022 (Miss.1994). However, the presumption is rebuttable if the teacher shows that the board member showed personal animosity towards the teacher or had a personal or financial stake in the outcome of the decision. Id.
¶ 10. Howard had worked for the Mound Bayou public schools for eighteen years until June 2001, when she was terminated by Campbell. Howard became a member of the board in January 2002, approximately five months prior to Campbell's termination hearing. Howard testified *1287 that she had no hard feelings against Campbell, that the move to her next job was beneficial, and that she could be impartial and fair during the proceedings. From the record, it is evident that Campbell failed to rebut the presumption of honesty and integrity given to Howard; thus, this issue is without merit.

III. DID MEMBERS OF THE MBSD BOARD CONDUCT AN ILLEGAL PUBLIC MEETING PRIOR TO CAMPBELL'S HEARING?
¶ 11. In her last issue on appeal, Campbell argues that members of the board conducted an illegal public meeting prior to her hearing. Campbell claims that three members of the board held a meeting at a local church to discuss her hearing, thereby triggering the provisions of the Open Meetings Act. See Miss.Code Ann. § 25-41-1 to 17 (Rev.2003). However, our supreme court has stated that a function attended by a public board, whether informal or impromptu, is a meeting with the meaning of the Open Meetings Act only when there is to occur "deliberative stages of the decision-making process that lead to formation and determination of public policy." Bd. of Tr. of State Inst. of Higher Learning, et al. v. Miss. Publishers Corp., 478 So.2d 269, 278 (Miss.1985).
¶ 12. All three members of the board, Marion Bedford, Jerry Norwood and Amos Pates, who were in attendance at the church meeting testified as to the nature of the meeting. A local minister, Rev. Fred Raggs, had called a meeting of parishioners to discuss the situation of a young man charged with rape. During this meeting a few of the parishioners asked about the hearing involving Campbell. Bedford, a board member, testified that they informed those at the meeting as to when the hearing would be but refused to discuss any board business. According to the record, the board members repeatedly informed the others present that the meeting was not a board meeting and they would not discuss board business. It is clear that the members of the board were not at the church to discuss matters of the school board; thus, we find this issue to be without merit.
¶ 13. THE JUDGMENT OF THE BOLIVAR COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., BRIDGES, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.