# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CC-00897-SCT

*MAYOR AND CITY COUNCIL AND CITY OF COLUMBUS*

*v.*

*THE COMMERCIAL DISPATCH*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/2016 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| TRIAL COURT ATTORNEYS: | DAVID MICHAEL HURST, JR. |
| | JEFFREY JOHNSON TURNAGE |
| | MICHAEL D. CHASE |
| | CHRISTOPHER THOMAS GRAHAM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL D. CHASE |
| | JEFFREY J. TURNAGE |
| ATTORNEYS FOR APPELLEE: | D. MICHAEL HURST, JR. |
| | CLAY B. BALDWIN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 09/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., KING AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. The Mayor and the City Council members for the City of Columbus held four pairs of prearranged, nonsocial and subquorum gatherings over the course of two months. The gatherings were on the topics of economic development and maintenance of a public building. For each pair of gatherings, the Mayor first met with three Council members, and then later the same day, he met with the remaining three Council members on the same topic.

Because all of the gatherings were just shy of a quorum—four Council members would have constituted a quorum—the gatherings were not open to the public.

¶2.     A reporter for *The Commercial Dispatch* received notice of the meetings, and he filed an Open Meetings Act Complaint against the Mayor and the City of Columbus. The Ethics Commission found that the Mayor and the City of Columbus had violated the Open Meetings Act. The Mayor and the City of Columbus appealed to the chancery court. The chancery court affirmed the Commission's judgment on de novo review. The Mayor and the City of Columbus appealed to this Court. We affirm the judgment of the chancery court.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3.     The City of Columbus's governing body consists of six City Council members and the Mayor. The Mayor does not always vote; he votes only when the quorum's vote results in a tie. The Mayor and the Council members held four pairs of gatherings over the course of two months that were not open to the public. All of the gatherings were prearranged and took place in the Mayor's conference room.

¶4.     The first three pairs of gatherings occurred on January 23, 2014, February 3, 2014 and February 24, 2014. The gatherings covered the subject of economic development, specifically, retail development in Columbus. At each of the gatherings, the Council members met in two subquorum groups of three, and each subquorum group met with the Mayor and representatives from the Golden Triangle Development Link (the Link). After the gatherings, the Link announced that it had "decided to renew their retail development partnership" with the City of Columbus.

2

¶5.    The last pair of gatherings occurred on February 27, 2014, covering the subject of renovations to a public building. Once again, the Council members split into two subquorum groups of three to meet with the Mayor. After the gatherings, City officials issued a press release announcing how the project would be managed.

¶6.    A reporter for *The Commercial Dispatch* (*The Dispatch*), Robert Nathan Gregory, requested to "sit in on" the gatherings that took place on February 27, 2014. He was denied entry. After speaking to the chief operations officer for the City of Columbus, Gregory learned that similar gatherings had occurred on January 23, 2014, February 3, 2014 and February 24, 2014. Gregory filed an Open Meetings Act Complaint with the Mississippi Ethics Commission detailing the four pairs of gatherings.

¶7.    The Ethics Commission issued its Final Order on December 5, 2014. The Final Order found that the subject gatherings had circumvented the Open Meetings Act (the Act), and by circumventing the Act, the Mayor and City Council had violated it, specifically citing Mississippi Code Section 25-41-1, Mississippi Code Section 25-41-3 and Mississippi Code Section 25-41-5. The Commission ordered the Mayor and the City Council to "refrain from further violations" and "comply strictly with [the Act]."

¶8.    The Mayor and the City Council appealed to the Chancery Court of Lowndes County. On appeal, *The Dispatch* stepped in as the petitioner in place of Gregory.[1] On May 24, 2016, after a de novo review, the trial court issued its Opinion and Judgment. The trial court

---

[1]Although *The Dispatch* picked up the case on the trial-court level, the trial court never ruled on the Motion to Substitute the Petitioners. However, a Motion was made before this Court, and this Court issued an Order allowing the substitution on October 25, 2016.

upheld the Commission's ruling that the subject gatherings had violated the Act. The Mayor and the City Council (the City) appealed. We affirm.

## STATEMENT OF ISSUES

¶9.     On appeal, the City raised one general issue in its statement of the issue: "Whether the chancery court erred in affirming the Final Order of the Mississippi Ethics Commission in MEC case M-14-002." In its brief, the City then restyled the issue into seven interrelated issues, and in response, *The Dispatch* argued three issues. The Court has consolidated the interrelated issues to one concise issue with two subparts. The Court holds that the one issue with two subparts is dispositive, and the additional arguments of the City are without merit.

> **Whether the Open Meetings Act requires prearranged, nonsocial and sub-quorum sized gatherings regarding economic development and maintenance of a public building to be open to the public.**
>
> > **(A) Section 25-41-1 of the Open Meetings Act is clear and unambiguous.**
> >
> > **(B) Under the instant facts, the gatherings should have been open to the public.**

## STANDARD OF REVIEW

¶10.    The Open Meetings Act states that the chancery court should consider an appeal from the Ethics Commission de novo. Miss. Code Ann. § 25-41-15 (Supp. 2016) ("Any party may petition the chancery court of the county in which the public body is located to enforce or appeal any order of the Ethics Commission issued pursuant to this chapter. In any such appeal[,] the chancery court shall conduct a de novo review."). However, contrary to the City's argument, the statute does not explicitly state the standard of review for the Supreme

4

Court; therefore, the Court applies the customary standard of review. When reviewing findings of fact, the Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Gannett River States Publ'g Corp. v. City of Jackson*, 866 So. 2d 462, 465 (Miss. 2004) (citing *Morgan v. West*, 812 So. 2d 987, 990 (Miss. 2002)). "When reviewing questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of the law." *Gannett River States Publ'g Corp.*, 866 So. 2d at 465.

**ANALYSIS**

**Whether the Open Meetings Act prohibits subquorum sized gatherings that entail the discussion and deliberation of economic development and maintenance of a public building to be closed to the public.**

¶11.    The analysis of this issue begins with a de novo determination of whether Section 25-41-1 of the Act is plain and unambiguous. The Court holds that it is plain and unambiguous. Next, considering Section 25-41-1 as plain and unambiguous, the Court determines whether the findings of fact of the trial court were an abuse of discretion. Lastly, based on the findings of fact and legal analysis, the Court concludes that the gatherings held by the City should have been open to the public.

**(A) Section 25-41-1 of the Open Meetings Act is clear and unambiguous.**

¶12.    In determining whether a statute is clear and unambiguous, the Court has stated:

No principle is more firmly established, or rests on more secure foundations, than the rule which declares when a law is plain and unambiguous, whether it

5

be expressed in general or limited terms, that the Legislature shall be deemed to have intended to mean what they have plainly expressed, and, consequently, no room is left for construction in the application of such a law.

*Conway v. Mississippi State Bd. of Health*, 173 So. 2d 412, 415 (Miss. 1965) (internal quotation omitted) (quoting *Wilson v. Yazoo & M.V.R. Co.*, 6 So. 2d 313, 314 (Miss. 1942)). Further, the Court has stated that "courts are without the right to substitute their judgment for that of the Legislature as to the wisdom and policy of the act and must enforce it, unless it appears beyond all reasonable doubt to violate the Constitution." *5K Farms, Inc. v. Mississippi Dep't of Revenue*, 94 So. 3d 221, 227 (Miss. 2012).

¶13.     In whole, Section 25-41-1 of the Mississippi Code states:

> It being essential to the fundamental philosophy of the American constitutional form of representative government and to the maintenance of a democratic society that public business be performed in an open and public manner, and that citizens be advised of and be aware of the performance of public officials and the deliberations and decisions that go into the making of public policy, it is hereby declared to be the policy of the State of Mississippi that the formation and determination of public policy is public business and shall be conducted at open meetings except as otherwise provided herein.

Miss. Code Ann. § 25-41-1 (Rev. 2010). The City takes the position that Section 25-41-1 "is a general statement of legislative policy and purpose." *The Dispatch* argues that "the Legislature specifically and unequivocally enacted clear language in the very first opening section of the Open Meetings Act[,] itself expressing the indisputable philosophy and spirit of the Act," and the Act should be construed considering the "Philosophy and Spirit of [the] Act."

¶14.     As stated by *The Dispatch*, the Court has determined that Section 25-41-1 sets forth the spirit of the Act. *Hinds Cty. Bd. of Supervisors v. Common Cause of Mississippi*, 551

6

So. 2d 107 (Miss. 1989). "The philosophy of the Open Meetings Act is that all deliberations, decisions and business of all governmental boards and commissions, unless specifically excluded by statute, shall be open to the public." *Id.* at 110 (citing Miss. Code Ann. § 25-41-1). Further,

> Every member of every public board and commission in this state should always bear in mind that the spirit of the Act is that a citizen spectator, including any representative of the press, has just as much right to attend the meeting and see and hear everything that is going on as has any member of the board or commission.

*Id.* Although not requiring meetings to be open could allow for more frank conversation or be preferable for the Council, it is of "far greater importance . . . that all public business be open to the public." *Id.*, *see also* **Gannett River States Publ'g Corp.**, 866 So. 2d at 468. The Act also provides the specific reason why public business should be performed at public meeting; it states that it is "essential to the fundamental philosophy of the American constitutional form of representative government and to the maintenance of a democratic society." Miss. Code Ann. § 25-41-1. Thus, where the Act states "the wisdom and policy of the [A]ct," the Court "must enforce it, unless it appears beyond all reasonable doubt to violate the Constitution." **5K Farms, Inc.**, 94 So. 3d at 227.

¶15. Aside from philosophy and spirit of the Act, Section 25-41-1 also explicitly details what constitutes public business. It lists "*deliberations and decisions that go into the making of public policy*" and then states, "[I]t is hereby declared to be the policy of the State of Mississippi that the *formation and determination of public policy is public business* and shall be conducted at open meetings except as otherwise provided herein . . . ." Miss. Code Ann.

7

§ 25-41-1 (emphasis added). Under the emphasized language above, "deliberations . . . that go into the making of" public policy are to be open to the public. *Id.* Further, the Court has interpreted the emphasized sections of the statute, holding that "the deliberative stages of the decision-making process *that lead to* 'formation and determination of public policy' are required to be open to the public." **Bd. of Trustees of State Institutions of Higher Learning v. Mississippi Publishers Corp.**, 478 So. 2d 269, 278 (Miss. 1985) (emphasis added).

¶16.    Although the City argues that Section 25-41-1 is merely a "general statement of policy and purpose," to ignore Section 25-41-1 simply because the City claims it is a general policy would be to ignore the plain language of the Act. Section 25-41-1 avers the philosophy and spirit of the Act, and it defines what is required to be open to the public. *See **Mississippi Publishers***, 478 So. 2d at 278; *see also* Miss. Code Ann. § 25-41-1. If deliberations that "go into making" or "lead to" public policy occur at a gathering of board members, the Act unequivocally states that those gatherings are "public business and shall be conducted at open meetings." Miss. Code Ann. § 25-41-1. The Act carves out exceptions for only "chance meetings or social gatherings of members of a public body" or executive sessions. Miss. Code Ann. §§ 25-41-7, 25-41-17.

¶17.    Thus, the Court holds under de novo review that Section 25-41-1 is clear and unambiguous. Section 25-41-1 asserts the philosophy and spirit of the Act. Additionally, Section 25-41-1 also addresses when a gathering must be open to the public, and determining when a gathering must be open to the public is a fact-intensive analysis focusing on the subject matter of the gathering and the circumstances surrounding the gathering.

8

**(B) Under the instant facts, the gatherings should have been open to the public.**

¶18.    As stated above, the gatherings all were prearranged and took place in the Mayor's conference room. The City Council split into two subquorum groups of three people for each gathering. One group met in the morning, and the other group met in the afternoon on the same topic. The subject of the gatherings is not in dispute. The first three days of gatherings on January 22, 2014, February 3, 2014 and February 24, 2014, covered the topic of economic development in Columbus, specifically retail development. After these gatherings, the Link announced that it had decided to renew its retail development partnership. The last pair of gatherings, on February 27, 2014, involved renovations of a public building. After these gatherings, City officials issued a press release announcing how the project would be managed.

¶19.    The trial court correctly noted the nature of the gatherings in its Opinion and Judgment. It stated, "The meetings held by Columbus in this case were specifically held with a sub-quorum present to avoid the consequences of the Open Meetings Act." The trial court's finding is supported by the record, and it does not rise to the level of an abuse of discretion. The trial court also noted the importance of the philosophy and spirit of the Act. Further, the gatherings were not by chance or a product of a social gathering. Thus, as the trial court found, it is clear from the record that the gatherings were targeted at avoiding or circumventing the Act.

¶20.    The trial court also found "[t]he discussions not open to the public led to official action by the Columbus quorum when they met." The record is clear that, although a quorum

9

was never present in the same room at the same time, public business was discussed at all of the gatherings.[2] Thus, this factual conclusion also does not rise to the level of an abuse of discretion.

¶21. The four pairs of subquorum gatherings, along with the fact that they were prearranged, nonsocial, and on the topic of public business, illustrated the City's *intent to circumvent or avoid* the requirements of the Act. The philosophy and spirit of the Act prohibit the City from intending and attempting to circumvent or avoid the requirements of the Act. Additionally, the plain language of Section 25-41-1 requires the subject gatherings to be open to the public. Thus, the City's failure to hold open gatherings violated the Act.

¶22. To be clear, this holding is fact-specific. In the case *sub judice*, the City acted with the express intent of circumventing the Act. The gatherings were preplanned. The attendees invited purposely constituted less than a quorum. The gatherings were for the express goal of discussing City business. Further, the facts support that City business was conducted and policy formulated at the gatherings. Finally, the gatherings did not fall under any of the exceptions specified in the Act. For these, and other reasons contained in the record, the holding of the trial court is supported by the evidence.

---

[2]The City admits in its brief that "discussion between council members regarding . . . the topic at hand" "possibly" occurred. In its reply brief, the City concludes that "there is no evidence that any council member discussed the matters at issue with more than two other members directly or by proxy." Thus, the City admits that public business was discussed, but it asserts that because a quorum was not present, the discussions did not fall under the Act.

¶23. Further, the additional arguments brought by the City do not affect the requirement that the subject gatherings must be open to the public. Therefore, they are without merit, and we refrain from addressing them.

## CONCLUSION

¶24. Prearranged, nonsocial gatherings on public business that are held in subquorum groups with the intent to circumvent the Act are required to be open to the public under Section 25-41-1 of the Open Meetings Act. Thus, the trial court correctly found that the City violated the Open Meetings Act.

¶25. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**

11